MARY L. PECK, Respondent, *v.* WILLIAM VANDEMARK, Executor, etc., Appellant.

The provisions of the statute of frauds, making certain agreements invalid unless in writing, do not require the whole agreement to be embodied in one writing. When there has been a protracted correspondence between the parties in relation to the subject-matter all of the letters may be considered, and if, taken together, they show what the agreement was, and meet the requirements of the statute, it is sufficient.

An ante-nuptial contract may be established by letters between the parties written before marriage.

Plaintiff, a widow drawing a pension from the United States government, entered into an ante-nuptial contract with defendant's testator, by which, in consideration of her promise to marry him, he agreed to give her, by will, one-half of his entire property, absolutely, and the use of the other half during life. The marriage was consummated, and the parties lived together as husband and wife until his death. He left a will by which he gave to her but a small portion of his estate aside from her dower right. This action was brought, before the estate was settled and debts paid, to recover damages for breach of the contract. Plaintiff was non-suited on the ground that the action had been prematurely brought. *Held* error; that the value of the promise was to be ascertained by taking as a basis the amount of the estate after payment of debts and expenses of administration, which could be ascertained with sufficient accuracy; that, if it could not have been so ascertained at the time of the trial, the rights of plaintiff could have been settled and determined by an interlocutory judgment, and a reference ordered to take an accounting; the hearing upon which could, if necessary, have been postponed until a final settlement of the executor's accounts by the surrogate, and that it was no objection to this mode of relief that the form of the action was one of law.

(Argued March 18, 1885 ; decided April 14, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made May 30, 1884, which set aside a nonsuit and directed a new trial. (Reported below, 33 Hun, 214.)

This action was brought to recover damages for an alleged breach of an ante-nuptial contract.

In September, 1879, the plaintiff was a widow, whose husband had been killed in the civil war, and she was receiving an annual pension of $96. She became acquainted with the defendant's testator, Sealey Peck, and he made her a proposition of marriage which led to a correspondence between them. Several letters were written by each to the other for the purpose of settling and agreeing upon the pecuniary provision which he would make for her in case she would marry him. He represented that he was worth $10,000, and the correspondence resulted in a proposition by him to give her, by will, one-half his entire property, absolutely, and the use of the other half during her life. She accepted the

proposition and married him on the 9th day of March, 1880, and they thereafter cohabited together as husband and wife. On the 20th day of April, 1881, he made a will in which he bequeathed to her only the sum of $200, in addition to her dower interest in his estate; and he died on the 6th of June thereafter, leaving the will in force, which was proved, and letters thereon were issued to the defendant on the 19th day of September, 1881. The testator left real estate worth $5,000, and personal property worth about $2,300, and he owed a small amount of debts. Thereafter, in April, 1882, this action was commenced by the plaintiff to recover damages for the breach of the ante-nuptial contract on the part of the testator. The answer put in issue the material allegations of the complaint. The cause came on for trial at a Circuit Court, and at the close of the evidence the trial judge nonsuited the plaintiff on the ground that the claim was one that, in the nature of the case, could not be estimated until the estate was settled and the debts shown to have been paid, and that, therefore, the action was prematurely brought.

Further facts appear in the opinion.

*W. H. Adams* for appellant. The agreement set forth in the complaint is one made in consideration of marriage and, therefore, is not a valid agreement unless it was reduced to writing and signed by the party to be charged. (3 R. S. [7th ed.] 2327.) The "memorandum" spoken of in the statute must be such an one as will contain and show upon its face the entire agreement, the parties, consideration, subject-matter and promise, so that a person, in reading it, would be able to understand precisely what the agreement was; this result cannot be attained by construing two or three papers together, unless they are physically joined or the intention to unite them appears upon the face of the papers. (*Nam* v. *Warlters*, 5 East, 10; *Abeel* v. *Radcliff*, 13 Johns. 297; *Dodge* v. *Lean*, id. 508; *Baptist Church* v. *Bigelow*, 16 Wend. 30; *Wright* v. *Weeks*, 25 N. Y. 153; *Dickinson* v. *Rawson*, MSS. op. TALCOTT, J.; *Drake* v. *Seaman*, 31 A. L. J. 174.) The agreement, if any is

established by the letters, is one by which defendant's testator obligated himself to perform some act for the benefit of the plaintiff after their marriage, and is void for want of consideration. (Throop on Verb. Agree., §§ 723, 761; Fry on Spec. Perf. 263; *Brown* v. *Conger*, 8 Hun, 625; *Curry* v. *Curry*, 10 id. 366.) The will which was offered for the express purpose of establishing the ante-nuptial agreement was not admissible for that or any other purpose. (Throop on Verb. Agree., §§ 740, 741.)

*F. L. Manning* for respondent. A proposition made by one party by letter to another party at a distance, containing a specific offer, which is unconditionally accepted by the latter, will constitute a valid contract between them. (*Meyers* v. *Smith*, 48 Barb. 614.) Cotemporaneous writings between the same parties upon the same subject-matter may be read and construed together as one contract. (*Rogers* v. *Smith*, 47 N. Y. 324; *Jackson* v. *Dinsbaugh*, 1 Johns. Cas. 91; *Stow* v. *Tifft*, 15 Johns. 458; *Matter of Freeman*, 54 Barb. 274; *Jackson* v. *McKenney*, 3 Wend. 233; *Van Horn* v. *Crain*, 1 Paige, 455; *Hills* v. *Miller*, 3 id. 254; *Wilson* v. *Troup*, 2 Cow. 195; *Cornell* v. *Todd*, 2 Denio, 103; *How* v. *Woodruff*, 21 Wend. 640; *Rawson* v. *Lapman*, 5 N. Y. 456.) Letters of a correspondence before marriage may establish an ante-nuptial settlement when they sufficiently furnish the terms of the agreement. The American rule is favorable to marriage articles when the party marrying on their faith had good reason to rely upon them as such. (Schouler's Dom. Rel., § 177.) The letters in evidence formed a valid contract in writing, made in view of and in consideration of marriage as well as the other valuable consideration, viz. : the loss of pension, which is not void by the statute of frauds. (3 R. S. [7th ed.] 2337.) All contracts made between parties in contemplation of marriage shall remain in full force after such marriage takes place. (2 R. S. [7th ed.] 2336.) The plaintiff might have maintained an action at law against defendant's testator, had the liability accrued or the breach of the contract been made by him during

his life, and a legal action would have been maintainable. (*Howland* v. *Howland*, 20 Hun, 472; *Wright* v. *Wright*, 54 N. Y. 437; *Adams* v. *Curtis*, 4 Lans. 164; *Berdell* v. *Parkhurst*, 19 Hun, 356; *Minier* v. *Minier*, 4 Lans. 421; *Whitney* v. *Whitney*, 49 Barb. 319; *Power* v. *Lester*, 23 N. Y. 527; *Foster* v. *Foster*, 5 Hun, 557; *Fitch* v. *Rathburn*, 61 N. Y. 599; *Kelly* v. *Kelly*, 18 Hun, 472; Code, § 450.) Under the statutes of New York marriage neither pays, transfers or extinguishes a debt owing from a husband to a wife, and the wife may sue him in a common-law action to recover back the loan. (*Keyser* v. *Keyser*, 1 City Court, 435; Abb. An. Dig. 1882–83, p. 224.) If this contract had been by parol for services to be paid by the bequest of specific property and therefore void, the court would not order specific performance, but would take the value of the property to be given as the rule of damages in an action at law brought to recover for the services against an executor. (*Lisk* v. *Sherman*, 25 Barb. 433; *Fort* v. *Gooding*, 9 id. 371; *Boutwell* v. *O'Keefe*, 32 id. 434; *Abbott* v. *Draper*, 4 Denio, 51; *Thomas* v. *Dickinson*, 2 Kern. 364; *King* v. *Brown*, 2 Hill, 485.) An action of equity will not be entertained where the legal remedy is adequate to do full justice to the parties. (*Seymour* v. *Delancey*, 6 Johns. Ch. 222; 3 Cow. 445; 1 How. App. Cas. 705, 751.) It is immaterial, under our present judicial system, whether you name a case equity or law. (*Wright* v. *Wright*, 54 N. Y. 437; *Corning* v. *T. N. F.*, 40 id. 207; *Emery* v. *Pease*, 20 id. 62; *Corn Ex. Bk.* v. *Babcock*, 41 id. 647.) This complaint contains all the facts necessary in an equity action, and all the parties are before the court. An equity action can be noticed at the Circuit and the issues tried on the pleadings. (*Howlett* v. *Wood*, 62 N. Y. 75.) The trial court erred in holding that the claim was one which, in the nature of the case, cannot be estimated until the estate is settled and the debts are shown to be paid, and that the action should have been in equity. (Code, §§ 1824, 1371, 1825, 1826.) The will of March 22, 1880, showed another step by Peck, in the fulfillment and ratification of his contract, and put a construction on same by which he

was bound. (*Stokes* v. *Ricknagel*, 38 N. Y. Sup. 369; *Reading* v. *Gray*, 37 id. 79.)

EARL, J. The eleven letters put in evidence which passed between the plaintiff and the testator, commencing on the 4th day of October, 1879, and ending on the 3d day of December thereafter, all related to the same subject, to-wit: the marriage of the parties and the terms upon which it should be consummated. The whole correspondence was to settle the pecuniary compensation which the plaintiff was to have in consideration of her marriage to the testator. He distinctly proposed to give her by will one-half of the entire property which he should leave at his death, and the use of the other half thereof for her life. She finally accepted the proposition, and relying upon the agreement thus made, married him, and subsequently lived with him. These letters furnish the written evidence of the agreement required by the statute of frauds; and it matters not that the whole agreement may not be contained in one letter. The entire proposition, however, on the part of the testator was in one letter, and her acceptance thereof in another. All the letters taken together show clearly what the agreement was, and they are all connected and related to each other, and thus all of them may be considered for the purpose of ascertaining what the agreement was. In 1 Greenleaf on Evidence (Redfield's ed., § 268), the learned author says: "It is sufficient if the contract can be plainly made out in all its terms from any writings of the party, or even from his correspondence, but it must all be collected from the writings." In Wharton on Evidence (§ 872), it is said: "It is enough in order to meet the requirements of the statute, if the substance of the contract is to be inferred from writings, either by the parties or by their agent, though the writings are made up of disjointed memoranda or protracted correspondence." In Reed on the Statute of Frauds (§ 341), it is said: "The memorandum required by the statute of frauds may be on different papers, one of which must contain a reference to the other;" and in Schouler's Domestic Relations (§ 177), it is said: "Letters or

correspondence before marriage may establish an ante-nuptial settlement where they sufficiently furnish the terms of the agreement.''

This contract was founded upon a sufficient consideration. The plaintiff, in order to marry the testator, was obliged to surrender the pension which she was receiving from the government, and this the testator knew. Both the surrender of the pension and the marriage itself furnished ample consideration for the promise of the testator. (Schouler's Domestic Relations, § 173; *Magniac* v. *Thompson*, 7 Peters, 348; *Wright* v. *Wright*, 54 N. Y. 437.) The ante-nuptial agreement was, therefore, good in form and founded upon a sufficient consideration and bound the testator.

As the testator did not perform his agreement, the plaintiff was entitled to recover against his executor damages for the breach thereof. Although in the correspondence between them he represented that his property was worth $10,000, that value did not enter into the contract. All he agreed to give her was one-half of all the property he should leave at his death and the use of the other half for her life. He did not agree to appoint her executrix of his will, and as she could receive her interest in the personal property in case he had kept his promise only through regular administration of his estate, the value of his promise is to be measured by taking as a basis the amount of the estate after the payment of debts and the expenses of administration, as the balance thus ascertained would be his entire property left at his death. It is not impossible to ascertain with sufficient accuracy the amount which the plaintiff is entitled to recover. The debts of the testator can be easily ascertained, and were ascertained substantially at the trial; and the expenses of administration could then also have been with sufficient accuracy determined. But if the exact amount of the testator's property could not at the time of the trial have been ascertained, the rights of the plaintiff could have been settled and determined by an interlocutory judgment and a reference ordered to take the accounting of the executor. The hearing upon such a reference could, if necessary, have been postponed until a final settle-

·ment of the executor's accounts before the surrogate. The form of this action furnishes no obstacle to such a method of disposing of the case. The facts are stated in the complaint and answer; they were proved upon the trial, and the court then and there had all the powers in law and equity needed to administer justice between the parties. If in consequence of our decision it becomes necessary to assess the plaintiff's damages, such assessment may be postponed to give the executor sufficient time, if he needs it, to settle his accounts before the surrogate.

So, in any aspect of the case, it cannot be said that this action was prematurely commenced, or that there is any impossibility or even any great difficulty to ascertain the amount the plaintiff is entitled to recover, which, as before stated, is one-half of the estate absolutely after paying debts and expenses of administration, and the use of the other half during her life. The interest in the latter half may be computed by the annuity tables provided for such cases.

We are, therefore, of opinion that the decision of the General Term was right, and that its order should be affirmed and and judgment absolute ordered against the defendant, with costs.

All concur.

Order affirmed and judgment accordingly.