JOHN MYERS AND OTHERS, RESPONDENTS, v. JAMES CRONK, AS ADMINISTRATOR, ETC., OF HIRAM A. FERGUSON, DECEASED, APPELLANT.

*Reference of a disputed claim against an estate — the referee can only pass upon the validity and amount of the claim referred to him — claimants having separate interests cannot unite — when performance of an agreement will not be specifically enforced.*

Upon the hearing before a referee, to whom had been referred a disputed claim presented by persons claiming under a will of Eveline B. Ferguson against the administrator of Hiram, her husband, it appeared that Eveline died in June, 1878, leaving a will by which she disposed of a note of $600 which had been made and was held by her husband, giving certain amounts thereof, and certain other sums of money, to persons therein named, who joined in presenting the claim. Hiram died intestate August 10, 1883, leaving an estate, consisting of real and personal property, worth about $10,000, and on October 22, 1883, the will of Eveline was admitted to probate and letters of administration were issued thereon.

The referee found that the claimants had agreed that the will of Eveline should not be admitted to probate, and that they would permit the estate to remain in the hands of Hiram without payment of their legacies, and that, in consideration of this promise, Hiram agreed to leave them all his property, and that the plaintiffs were entitled to recover from his administrator all the estate, both real and personal, of Hiram after deducting expenses of administration and just debts.

*Held*, that the judgment should be reversed for the following reasons:

*First.* That no recovery could be had as to the real estate as the administrator had no rights therein.

*Second.* That the referee had attempted to decree a specific performance of the alleged contract, as if the reference were an action in equity, while all that he could properly do was to pass upon the validity and amount of the claim referred to him.

*Mowry* v. *Feet* (88 N. Y., 453) followed.

*Third.* That if the deceased agreed to leave his property to the legatees of his wife, to be divided between them share and share alike, then the claim of each legatee was separate and distinct from that of every other, and they could not unite in a joint proceeding.

*Fourth.* That as the agreement was conditioned upon the agreement that the will of Eveline should not be admitted to probate, and as it appeared that the will had been admitted to probate, and, further, as the administrator of Eveline had recovered a judgment against the defendant for the note and money above mentioned, there was no consideration for the promise of Hiram to devise the property to the claimants.

*It seems,* that, even if the matter were in a court of equity, a case for decreeing specific performance was not shown, as there was no writing, and no such part performance as to take the case out of the statute of frauds; nor was the alleged contract shown to be so fair and just that it should be enforced by specific performance.

APPEAL from a judgment, entered in Warren county, upon the report of a referee appointed to pass upon a disputed claim presented against the estate of the defendant's intestate.

This claim, which was presented by several persons against the estate of Hiram A. Ferguson, deceased, was disputed by the administrator and referred under the statute. Eveline A. Ferguson, wife of Hiram A., died about June 9, 1878, leaving a last will and testament. By this she disposed of " my note of six hundred dollars that Hiram Ferguson holds," giving certain amounts to several persons. She also gave to several persons clothing and bedding, and also to Charles Myers $100 and to John Myers fifty dollars. After her death one Mary J. Marshall had possession of her will, and of her clothing and some money. In a conversation which she held with Hiram A. Ferguson, after his wife's death, he said he was willing that the clothing should go as she devised; the furniture and money he wanted to keep, and would give that and all his property to the relatives of his deceased wife. None of the present claimants were present except John Myers.

It seems that the note referred to was one made by Hiram A. Ferguson, dated May 10, 1873, payable at one year to his wife or bearer, with interest. The money was a little over $200. Two other witnesses testify to this conversation. George W. Nelson testifies to a conversation which he had with Hiram A. after his wife's death, in which Hiram A. said that he had made arrangements with the parties to whom the money and beds were willed not to go on and prove the will, and that after his death they should have what property he had and hers. Another witness testifies that, on another occasion, he said his property should be equally divided among those named in his wife's will.

Hiram A. died intestate August 10, 1883, leaving an estate worth about $10,000, which was personal property, except a farm worth about $1,500. After his death, and on the 22d of October, 1883, the will of Eveline B. was admitted to probate, and letters of

administration with the will annexed were issued thereon. The referee has found that the plaintiffs were entitled to recover from the administrator all the estate, both real and personal, of Hiram A., after deducting expenses of administration and just debts The administrator appealed.

*Orin Gambell*, for the appellant.

*W. B. French*, for the respondents.

LEARNED, P. J. :

It is quite obvious that there should be no recovery of the real estate of the intestate against the administrator. He has no rights therein, and a decision against him would not take the real estate from the heirs. The referee has attempted to decree a specific performance of the alleged contract; as if this reference were an action in equity. This he could not do. There cannot even be a judgment against the claimant by way of counter-claim. (*Mowry* v. *Peet*, 88 N. Y., 453.) All that the referee can properly do is to pass upon the amount and validity of the claim; that is of a claim to be paid by the administrator in the course of administration. Clearly he cannot try an action for the enforcement of a contract specifically. Assuming for the present the existence and validity of the contract, the claimants assert that it was broken and that they are entitled to damages for the breach. This view was laid down in *Peck* v. *Vandemark* (99 N. Y., 29). In that case the plaintiff claimed that she married the testator on a promise that he would give her, by will, half of his property absolutely, and the other half, for life. And the court held that the amount of the damages should be ascertained, either on the trial of the case or after the administrator's accounting. Again, there is no joint claim of these parties. If the alleged contract is so vague that the deceased was bound only to give his property to some of his wife's relatives, and in such proportions as he might choose, then it would be impossible to ascertain what damages any one had suffered by the breach.

If, on the other hand, as is found by the referee, the deceased agreed to leave his property to the legatees of his wife, to be divided between them share and share alike, then the claim of each of said legatees was separate and distinct from that of every other. They

had no joint claim and could not lawfully unite in a joint proceeding. There are no pleadings and, therefore, the misjoinder cannot be set up by pleading.

The claim presented to the administrator in this case alleges a joint contract; that is, a contract to leave all the decedent's property to the devisees and legatees named in the will of Eveline B., but the referee has found a several contract to give it to them share and share alike.

Again, assuming as before the existence and validity of the contract, it was conditional. The condition was that the will of Eveline B. should not be probated; that Hiram A. should keep the money and have the use of the beds for his life. But it is proved that the will has been proved and an administrator thereof has been appointed. Furthermore; by an appeal argued at this same term, it appears that a claim of that administrator of Eveline B. for the note and money above mentioned was made to the administrator of Hiram A. and was referred at the same time to the same referee who decided this case; tried on the same evidence and decided one day afterwards; and the judgment on the decision entered at the same time with this. By that judgment the administrator of Eveline B. has recovered the money, the surrender of which was the alleged consideration for the contract on which this claim is brought. It is certainly somewhat inconsistent that the same referee should hold that the same legatees of Eveline B. had agreed that her will should not be proved and that they would permit the estate to remain in the hands of Hiram A. without payment of their legacies; that in consideration of this promise Hiram A. agreed to leave them all his property; and that the estate is liable for a breach of this promise, and is also liable for the money which these legatees agreed to surrender as a consideration for the promise. If their agreement was not binding, it is difficult to see where was the consideration for his. It is true that where a promisee does an act relying on a promise that in consideration thereof the promisor will do a certain act, such promise will be upheld. (*Todd* v. *Weber*, 95 N. Y., 181.) But, in the present case, what did these claimants do in reliance on the decedent's promise? They made no agreement to surrender their legacies and not to have the will proved. Nor did they, in reliance on the promise of decedent, surrender their legacies. And

the will was proved. All that can be said is, that for several years they did not take any steps to compel the proving of the will or to enforce their legacies. But it does not appear that they have lost anything thereby; especially since the administrator of Eveline B. has recovered a judgment from the avails of which their legacies are payable. We have said that they made no agreement. The alleged wishes and promises of Hiram A. were mentioned to them or to some of them. But it does not appear that they made any promise on their part.

The claimants urge the specific performance of the contract. We have already said that a referee in these proceedings is not clothed with such equity powers as to decree a specific preformance of a contract to convey land. But even if this case were in a court of equity, a case for decreeing specific performance would not have been shown. First. There is no writing. Second. There is no such part performance as to take the case out of the statute. Such part performance always involves the condition that damages will not compensate; and that the parties cannot be indemnified by a money judgment. No such conditions exist here. The claimants could be compensated in money. Third. The alleged contract is not so fair and just that it should be enforced by specific performance.

It is further urged that if the agreement is void by the statute of frauds, then the claimants are entitled to recover the money which they left in the hands of the intestate, $750 and interest. But the difficulties of this position are two-fold. First. If that money is payable at all it is payable to the administrator of Eveline B., and not to her legatees. So the referee held in the other proceeding. Second. If payable to her legatees it would be payable to them severally and they could not join in a proceeding to recover it.

We think the judgment must be reversed, referee discharged, new trial granted; costs subject to final judgment of the court in respect thereto.

BOCKES and LANDON, JJ., concurred.

Judgment reversed, referee discharged, new trial granted; costs subject to final judgment of the court in respect thereto.