(31 Abb. N. C. 410; 8 Misc. Rep. 640.)

## ANDERSON v. HERNANDEZ et al.

(Supreme Court, Special Term, New York County.  May, 1894.)

VENDOR AND PURCHASER— BONA FIDE PURCHASER.

Land sold by a trustee at public sale was bid in by one W., a friend of the trustee, but no money was paid, it being intended that the purchase money should be paid out of the proceeds of a resale by the purchaser. At the time of such sale the land was subject to an outstanding lease, which was afterwards canceled, and W. then resold the property to B. for a large advance on the price bid by him. The facts were known to B. at the time of her purchase. *Held*, that B. was not a bona fide purchaser.

Action by Horace Anderson, as substituted trustee, against Juan Ramon Martinez Hernandez and others, to set aside a deed. Judgment for plaintiff.

Harold Swain (Francis L. Wellman, Alfred G. Reeves, and Ambrose G. Todd, of counsel), for plaintiff.

George Bell, for defendants Hernz and Melhado.

Thompson & Koss (E. Ellery Anderson, of counsel), for defendants Blood and Koss.

PARKER, J.  Although the sale of the premises at public auction was in all respects regular in form, I have no doubt but that the purchase by Waddell was a collusive one. It is apparent he did not bid with any idea of purchasing for himself. He paid nothing, made no preparations for paying anything, was not asked to pay anything, and was never given any deed. Evidently the scheme was that he should bid off the premises, if they went for a less figure than they were considered worth; that no payment should be then exacted, but that the premises should be at once sold at private sale, and whatever advance could in this way be obtained should be shared as profits by those in the scheme. The subsequent accounting of the trustee, by which he credits the estate with the amount bid at the public sale,—$32,500,—only, and his conveyance to Melhado for that figure, well knowing that he was receiving from Mrs. Blood $40,000 for the same property, the fact that there was no transfer of Waddell's interest as purchaser to Melhado, nor any pretense that he had succeeded to Waddell's rights as a purchaser in the usual course of business, all show that Hernz and Melhado were the real schemers, and that Waddell was a mere assistant to them in carrying it out. A conveyance from the trusteee to Melhado, under the circumstances, would, as against them, clearly be avoidable at the election of the beneficiaries, or of the plaintiff in this action on their behalf. Pom. Eq. Jur. §§ 958, 1075, 1077; Scholle v. Scholle, 101 N. Y. 171, 4 N. E. 334.

If Mrs. Blood, who took the conveyance from Melhado, was a purchaser for value and in good faith, she acquired a title from Melhado that cannot be avoided, even though the title, as against him, could have been set aside on account of fraud. Pom. Eq. Jur. §§ 738, 739, 743. She was undoubtedly a purchaser for value. The serious question is, was she a purchaser in good faith? It is not claimed that she was a party to the original scheme of Hernz and

Melhado, or that she had actual knowledge of it. But it is claimed that she had notice of such facts concerning the transfer from Hernz to Melhado as preclude her from assuming the character of a purchaser in good faith. It seems to be well settled that, if one who purchases a title subject to an outstanding equity in another person has knowledge at that time of any fact sufficient to put him upon inquiry as to the existence or extent of such equity, it is his duty to prosecute the inquiry with diligence; and if he omits to do so he is chargeable with actual notice of the equity, and can, therefore, acquire no better title than his grantor actually had. If, after a diligent inquiry, he fails to discover the existence of such equity, he is protected against it. Id. § 753; Williamson v. Brown, 15 N. Y. 354. Very many cases in this state have adopted and applied that rule, but as none of them assume to change it, and in none is it more clearly stated, further citation is unnecessary. In determining whether Mrs. Blood had knowledge of facts sufficient to put her upon inquiry as to whether there was not an outstanding equity against Melhado's title, it is important to distinguish exactly what that equity was, and the grounds upon which it rested. The conveyance by which Melhado took title was given as part of a scheme arranged between himself and the trustee by which, under the guise of a fair sale at public auction, a profit could be made out of the trust property, for the benefit of Melhado at least, if not for the joint benefit of both. It was as much a fraud upon the beneficiaries for the trustee to conspire with Melhado, and assist him in making $7,500 out of the trust property, as if he was himself to share in it, and it was a fraud in which Melhado knowingly participated. Much more was it a fraud if Melhado was the attorney for the trustee and the beneficiaries, and conspired with him so that they both could make a profit out of the estate. Therefore, as against Melhado, the title which he took by the deed from Hernz was subject to an equity existing in favor of the beneficiaries to have it adjudged fraudulent and void.

At the time Mrs. Blood purchased the property from Melhado, three different persons acted as her agents in negotiating the purchase and in investigating the title,—her brother-in-law, George Blood; her attorneys, Mr. Lobenthal and Mr. Waddell,—and whatever facts came to the knowledge of either of such persons, while engaged in that business, must be considered as having come to her own personal knowledge. Pom. Eq. Jur. § 666; Holden v. Bank, 72 N. Y. 286; Constant v. University, 111 N. Y. 604, 19 N. E. 631. Charging her with knowledge of the facts which she and her several agents learned in that transaction, can there be any doubt but that she had knowledge of facts which should have suggested to her the question whether the property of the estate was not being unfairly disposed of? There was something more apparent to her than a mere sale, at an advanced price, by one who had himself purchased at public auction. She knew that the property had been owned by Hernz only as a trustee for others, and that, notwithstanding the public sale, he still held the title. It was apparent from the way the business was transacted with her

that, although Waddell had bid off the property, neither he nor Melhado had made any payment on such purchase; that he expected to obtain the amount of the price so bid from the sale to herself, and that the trustee was holding the title, and waiting for his pay until a resale could be made. She knew that as soon as the property was bid off the purchaser at once put it on the market for a resale, with the offer to sell at a bargain to a quick buyer, and that the price that it had been bid off for was but $32,500. She knew, therefore, that Waddell or Melhado would take $7,500 out of the property without advancing any money whatever. And she also knew that the trustee was not only aware of that fact, but was actually assisting them to do so. Moreover, she knew that both Melhado and Waddell were personal friends of the trustee; that the property when sold at public sale was subject to an outstanding lease that was clearly calculated to lessen the price for which it could be so sold; and that such lease was promptly canceled in order to make a sale to her, and that the property was really worth rather more than the sum she was giving for it. Now, concede that she did not know that Melhado was the attorney for trustee or beneficiaries, or that he and the trustee had agreed before the public sale that the property should, if possible, be bid off by a friend of theirs at a low bargain, and resold at an advanced price for their mutual benefit, and that Melhado acquired his title only in pursuance of and for the purpose of carrying out such plan. Nevertheless, the facts of which she did have knowledge suggest a scheme. A trustee does not ordinarily allow his friend to bid off trust property at $7,500 less than its value, and wait for the first payment until he can advertise and negotiate a resale at an advanced price. The sale to Waddell, and the conveyance subsequently to Melhado simultaneously with his conveyance to her, could not have appeared to Mrs. Blood and her agents as an ordinary business transaction, and certainly not one in which a trustee, acting in good faith, would be likely to join. It certainly suggests the query, for what reason does the trustee force upon the market, at public sale, this property, upon which there is an outstanding lease for three years? And why does he allow those interested in the lease to bid it in at so inadequate a price? And why, instead of compelling them to perform their contract and close the bargain by December 30th, as under his bid Waddell was obliged to do, does he wait for him to make a resale at an advanced price? What are the necessities that require the trustee to sell the trust property in such a manner and at such a sacrifice? She made no inquiry whatever, but took the title offered her, and under such circumstances, in my judgment, she does not stand in the position of a purchaser in good faith. The title in her is, therefore, subject to the right of the beneficiaries to have it adjudged void as against them, and, as the defendant Mrs. Koss is but a mere donee of Mrs. Blood, the title in her is also subject to the same equity. Ten Eyck v. Witbeck, 135 N. Y. 40, 31 N. E. 994.

These considerations force me to the conclusion that the relief asked for by the plaintiff in this action should be granted.