HORACE ANDERSON, as Trustee, etc., of RAMON MARTINEZ HERNANDEZ, Respondent, *v*. ISABELL M. BLOOD and Another, Appellants, Impleaded with Others.

*Inadequacy of consideration — impeachment of the title to real estate therefor — judicial notice that the purchaser's purpose is to resell at an advance — want of time to consider suspicious circumstances.*

Where the plaintiff in an action seeks to impeach the sale of real estate on the ground of inadequacy of consideration, he is bound to establish the inadequacy of the consideration by at least credible testimony, and not by prevaricating witnesses. Interests of purchasers of real estate cannot be taken away from them by evidence of uncertain character.

*Quære,* whether, in an action brought to set aside conveyances as fraudulent and void, the defense of inadequacy of consideration can be made available.

The court will take judicial notice that it is not an uncommon occurrence for a party to make a contract for the purchase of real estate, for the purpose of

reselling the same at a profit before he is obliged to complete his contract, and such a circumstance does not invalidate the sale of the real estate to him.

The case distinguished where suspicious circumstances are brought to the attention of a purchaser only at the moment of closing a purchase of real estate, from one in which the purchaser has had an opportunity to ponder and deliberately consider them.

PARKER J., dissenting.

APPEAL by the defendants, Isabell M. Blood and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of June, 1894, upon the decision of the court rendered after a trial at the New York Special Term setting aside deeds of certain premises, adjudicating as to the interests of the parties therein and directing an accounting.

The facts in this case appear in the opinion of PARKER, J.

*E. Ellery Anderson* and *John E. Parsons*, for the appellants.

*Harold Swain*, *Francis L. Wellman* and *Alfred G. Reeves*, for the respondent.

VAN BRUNT, P. J.:

I cannot concur in the conclusion arrived at by Mr. Justice PARKER in this case. Conceding the law to be as stated by him, that actual notice to Mrs. Blood or her agents was not necessary, but only the existence of such facts as would put them upon inquiry, it does not seem to me that such inquiry would have developed such a condition of affairs as would impeach her title.

It seems to me that the learned judge below arrived at the conclusion reached by him by considering the property to be of a value which is not established by the testimony, and by holding Mrs. Blood responsible for knowledge which might possibly have been acquired by a person not her agent. It is expressly stated by the learned justice that Mr. Waddell, who examined the title of this property upon a loan by his client thereon, was the attorney and agent of Mrs. Blood. An examination of the record shows that Mr. Waddell held no such relation to Mrs. Blood. He did not examine the title for her. It is true that she paid him his expenses and commissions on the examination of that title. But in such examination he was representing his client, the mortgagee, who pro-

posed to loan the money upon the property, and not Mrs. Blood; and he did not become her agent by reason of the fact that she was satisfied to take the property without any further examination by a lawyer employed by herself.

It further appears that the learned trial justice found the value of this property at the time of this purchase by Mrs. Blood to have been the sum of $45,000; and that was considered a suspicious circumstance in that it was bought below the market price, and should have induced inquiry and excited suspicion. I have examined the record in vain to find any proof of any such value. It is true that a witness by the name of Yeoman swore this property to be of the value of $52,500. But it is evident that this witness was perfectly willing to fulfill his contract of swearing to the value of this property with or without any information on the subject, and with or without any foundation for his opinion. He shows upon his cross-examination that he was ignorant of any transaction in respect to property in that neighborhood. He then testified that he made up his mind in regard to the value of the property because of his knowledge of the rental of the property and the taxes which were paid thereon — not the taxes which were paid in 1887 and 1888, but the taxes which were paid at the time at which he was testifying. He testifies that he was told that this property was rented for $4,000 or $4,500, and that the taxes at the present time were about $500, and that it was upon this basis that he made up his valuation. But when he ascertains that the rental of $4,000 or $4,500 was of a furnished house and not of a house unfurnished, he is entirely equal to the occasion. He says: "I was not governed by that (the rental value) at all. I made my valuation independent of that — not governed by anything that he said" in regard to the rent — exactly contrary to that which he had previously testified. And this witness, prevaricating as he evidently did, is considered to have established a foundation of value of this property, not of $52,500, but of $45,000 — a sort of half-way house between his estimate and that of a witness examined on the part of the defendant who had great experience in the sales of real estate as an auctioneer and real estate agent, and he testified that its value was $37,500, and that he had sold property equally good for that price.

If this plaintiff was seeking to impeach this sale on the ground

of inadequacy of consideration, he was bound to establish it by at least creditable testimony and not by prevaricating witnesses. Interests of purchasers of real estate cannot be taken away from them by evidence of such a character. It may be that inadequacy of consideration cannot be made available in an action of this character. (*Truesdell* v. *Sarles*, 104 N. Y. 164.)

But it must be borne in mind that the title of Mrs. Blood in respect to this real property cannot be impeached unless the evidence requires the finding of an unlawful combination between the former trustee and Melhado in respect to this sale. It is not enough that the trustee has acted improvidently or has made a sale when the property was not in such condition that it would not bring its largest price because of leases thereon. But it must be found that there was an understanding, a fraudulent scheme between the trustee and the purchasers at the auction sale that it should be bid in for their benefit.

I have searched the record in vain for any evidence of any such scheme or understanding. The only possible particle of evidence is that the premises were struck off at the auction sale for $32,500, and were subsequently sold by the purchasers for $40,000. It is in evidence that the auction sale was fairly conducted. Publicity was given to the sale because it is in evidence that parties who had their eye on this property were present, evidently desirous of acquiring it, but not yet exactly ready to purchase. In fact the representative of the very purchasers whose contract to purchase with Mrs. Blood has brought about this litigation, was present at the sale and says that it was fairly conducted, that there was no secrecy, nothing in the world about it to excite suspicion, and the property was struck off in the usual way.

But it is said by the learned judge in the court below, that it is evident that the purchasers at the auction sale never intended to take the title and that they never did until they got a purchaser. As it has been held by the Court of Appeals, in *Frace* v. *N. Y., L. E. & W. R. R. Co.* (143 N. Y. 182), that we may take judicial notice of the fact that certain spark arresters are in common use upon engines or locomotives, I think the court may also take judicial notice that it is not an uncommon occurrence by any means for a party to make a contract for the purchase of real estate, expecting

to resell the same at a profit, before he is compelled to complete under his contract. If such a circumstance is to invalidate transactions in real estate by means of suits brought years thereafter, there will not be much security in dealing in real estate in the city of New York.

The evidence shows that a reputable and careful attorney (Mr. Waddell) in the examination of this title saw nothing suspicious in regard to the circumstances attending it to call for special inquiry; and it should take no slight evidence to impeach the title of a purchaser who has paid a fair consideration for the property bought.

There is another feature in this case which seems to have been lost sight of. These suspicious circumstances, if any existed, in reference to this title, came to the knowledge of the agent of Mrs. Blood, if at all, at the moment of closing the title. They had no time to think about them, to cogitate over them, to come to conclusions after deliberation, and to study out the various suspicious points by means of which it is now sought to invalidate the title they then procured. They were first revealed then and there, and neither Mrs. Blood or her agents had any time to ponder over these things, and weigh them and determine as to whether they may have been suspicious or not. And yet the mental processes of these people are judged by what we say they should have been, we having had the opportunity to deliberate and ponder over the transaction. The very statement of the learned trial judge shows conclusively that the plaintiff was not entitled to a judgment. He, sitting as a judge, says at the end of the plaintiff's case: " It seems to me now that there is hardly proof enough here to show that this woman had reason to believe that there was any fraud going on against the *cestuis que trust*." Why should he expect these purchasers in the haste of closing the title to have come to the conclusion that such fraud existed? Hearing the evidence, having his attention called to the fact that fraud was claimed, yet he is not so impressed by the evidence but that he states that he does not think that there is any proof showing that Mrs. Blood had any reason to believe that there was any fraud going on against the *cestuis que trust*. There was nothing developed on the defendants' case which strengthened the proof upon the part of the plaintiff; and it is only upon reflection and turning over and considering the facts that the judge comes to

the conclusion that there was sufficient to put the purchaser upon inquiry. When did the purchaser have any time before closing this purchase to turn this over, to consider it, to place this and that fact together, and to form a conclusion?

It seems to me also that Mr. Justice PARKER is in error in holding that because of the stipulation contained in the case, the question as to whether the conveyance by Mrs. Blood to Mrs. Koss, her daughter, on her approaching marriage, was for a good consideration, was eliminated from the case. The learned judge below found that the consideration for said conveyance was the consideration of blood relationship, and the approaching marriage of her said daughter to Charles E. Koss. The stipulation did not impeach this statement contained in the deed. The learned trial judge in making his findings did not so think. All that the stipulation amounted to was that Mrs. Koss did not pay any money for the property. It in no way affected the question presented as to a marriage settlement. But it is not necessary to discuss this proposition, because the plaintiff entirely failed to make out a case. Indeed, the whole ground of this action rests upon the fact that a purchaser desirous of procuring this property for a particular purpose, was willing to pay an exorbitant price for the same, beyond all question far above its ordinary value. I do not think that this should justify the impeaching of this title years after it has been taken.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

O'BRIEN, J.:

While in the proper action the evidence might justify a recovery against the trustee or the purchaser at the auction sale for the profits realized upon the sale to Mrs. Blood, it is insufficient to warrant the conclusions that Mrs. Blood was not a purchaser in good faith, for value, or that the title of Mrs. Koss, her daughter, was invalid as against the beneficiaries.

I, therefore, concur with the presiding justice for a reversal of the judgment.

PARKER, J. (dissenting):

The opinion of the learned judge at Special Term so well presents the questions involved that we would not be justified in a

further discussion, were it not that the appellants cite authorities which it is claimed establish a different rule than that of *Williamson* v. *Brown* (15 N. Y. 354), upon which the court relied as authority for the foundation proposition.

On the 29th day of November, 1887, the defendant Juan Ramon Martinez Hernandez, known also as John R. M. Hernz, acting as trustee of the estate of his father, Ramon Martinez Hernandez, deceased, exposed the premises No. 11 East Twenty-ninth street in the city of New York for sale at public auction at the Exchange, and the same were struck down to Lloyd D. Waddell on a bid of $32,500. The terms of sale were signed for Waddell by Alexander Melhado, attorney. Waddell paid nothing upon his purchase and never received any deed. He was a friend and business associate of the defendants Hernz and Melhado, and lived with Melhado on said premises, 11 East Twenty-ninth street. On the day after the said auction sale, November 30, 1887, said premises were advertised by Melhado in the New York *Herald* for sale " at a bargain to a quick buyer." Melhado and Hernz were both lawyers; were then and had been for many years previously intimate friends and associates ; had had business transactions with each other ; occupied the same suite of rooms for offices, to which one and the same door afforded a common entrance ; Melhado had acted as attorney for beneficiaries of the estate of which Hernz was trustee, and also for the defendant Hernz, and at one time prior to the auction sale they had been associated in the active practice of law. Melhado was not required to pay anything, and paid nothing to the trustee, until he himself had sold the property for $40,000, and himself received part payment from the defendant Blood on the 6th day of January, 1888.

At the time of the auction sale Melhado's wife held a lease of the premises, which had nearly three years yet to run, and the existence of which not unlikely had a depressing effect upon the price of the property at the auction sale. At that time, also, she and her husband, Alexander Melhado, lived in the house as tenants of Hernz. Before the sale by Melhado to Blood for $40,000, and before Melhado was required to pay anything upon the property, Hernz actively assisted Melhado in procuring a contract for a loan of $30,000 upon the property, in fixing adjournments of the clos-

ing of the title with Mrs. Blood, and in carrying through the nego-
tiations for sale with Mrs. Blood and her agent and attorney.

· Hernz did not require Waddell to complete his contract accord-
ing to its terms, and waited for him and Melhado to advertise and
effect a resale before demanding any payment whatever.

Hernz accounted to the estate of which he was trustee for only
$32,500, being the amount bid at the auction sale.   These and other
facts, which it is not necessary to allude to, induced the court to find
" that the transactions between Hernz, Waddell and Melhado relative
to the premises in question, were carried on pursuant to a collusive and
fraudulent design and conspiracy to cheat and defraud the Her-
nandez estate."   And his conclusion is amply supported by the
evidence.

The court properly held that Mrs. Blood was chargeable with
knowledge of whatever facts her agents learned of while negotiat-
ing the purchase and investigating the title.   (*Holden* v. *N. Y. &
Erie Bank*, 72 N. Y. 286; *Constant* v. *University of Rochester*,
111 id. 604.)  And charging her with knowledge of the facts which
were brought to her attention and that of her agents, he found that
she had knowledge of certain facts of which he made twenty-three
specifications.

They need not be quoted at length for a summary of them will
be sufficient to make it appear that the court was justified in hold-
ing that they bring this case within the rule in *Williamson* v.
*Brown*.   Such a summary is contained in the opinion of the Spe-
cial Term, and we quote it : "There was something more apparent
to her than a mere sale, at an advanced price, by one who had him-
self purchased at public auction.   She knew that the property had
been owned by Hernz only as a trustee for others, and that, not-
withstanding the public sale, he still held the title.   It was apparent
from the way the business was transacted with her, that although
Waddell had bid off the property, neither he nor Melhado had made
any payment on such purchase; that he expected to obtain the
amount of the price so bid from the sale to herself, and that the
trustee was holding the title, and waiting for his pay until a resale
could be made.   She knew that as soon as the property was bid off
the purchaser at once put it on the market for a resale, with the
offer to sell at a bargain to a quick buyer, and that the price that it

First Department, April Term, 1895. [Vol. 86.

had been bid off for was but $32,500. She knew, therefore, that Waddell or Melhado would take $7,500 out of the property, without advancing any money whatever. And she also knew that the trustee was not only aware of that fact, but was actually assisting them to do so. Moreover, she knew that both Melhado and Waddell were personal friends of the trustee. That the property, when sold at public sale, was subject to an outstanding lease that was clearly calculated to lessen the price for which it could be so sold. And that such lease was promptly canceled in order to made a sale to her, and that the property was really worth more than the sum she was giving for it. Now, concede that she did not know that Melhado was the attorney for trustee or beneficiaries, or that he and the trustee had agreed before the public sale that the property should, if possible, be bid off by a friend of theirs at a low bargain, and resold at an advanced price for their mutual benefit, and that Melhado acquired his title only in pursuance of and for the purpose of carrying out such plan. Nevertheless, the facts of which she did have knowledge suggest just such a scheme. A trustee does not ordinarily allow his friend to bid off trust property at $7,500 less than its value, and wait for the first payment until he can advertise and negotiate a resale at an advanced price. The sale to Waddell, and the conveyance subsequently to Melhado simultaneously with his conveyance to her, could not have appeared to Mrs. Blood and her agents as an ordinary business transaction, and certainly not one in which a trustee, acting in good faith would be likely to join. It certainly suggests the query : For what reason does the trustee force upon the market, at public sale, this property upon which there is an outstanding lease for three years? And why does he allow those interested in the lease to bid it in at so inadequate a price? And why, instead of compelling them to perform their contract and close their bargain by December thirtieth, as under his bid Waddell was obliged to do, does he wait for him to make a resale at an advanced price? What are the necessities that require the trustee to sell the trust property in such a manner and at such a sacrifice?

" She made no inquiry whatever, but took the title offered her, and under such circumstances, in my judgment, she does not stand in the position of a purchaser in good faith."

It seems to be apparent from this statement that the court was justified in holding that she had knowledge of such facts as to put her on inquiry as to the existence of some right or title in conflict with that she was about to purchase. That being so, *Williamson* v. *Brown* is authority for his further holding that she is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to her claim to be considered a *bona fide* purchaser.

The appellants, however, insist that as Mrs. Blood was a purchaser for value, her title can only be affected by proof of actual notice of an intent by Hernz and Melhado to defraud the trust estate. In other words, that the numerous authorities which prior to and since *Williamson* v. *Brown* have asserted that presumptive notice will operate to deprive the grantee of a fraudulent vendee of his purchase, have no application to a purchaser for value; that in such a case actual knowledge will alone suffice. The decisions, as we read them, with certain exceptions to which we shall advert, establish on the contrary the general rule that the application of the doctrine of presumptive notice is not prevented by a valuable consideration. The fact that a valuable consideration has been paid is merely a circumstance tending to show that the purchaser did not have notice of the fraudulent intent of his grantor.

And it constitutes a circumstance to which much weight should be given in considering all of the facts and circumstances surrounding an alleged fraudulent transaction, because it is difficult to conceive that an ordinarily prudent person will pay all that a property is worth when he has reason to suspect some wrongdoing on the part of his grantor which may involve him in litigation and possibly lead to a loss of the property. But while it is evidence bearing upon the question of notice, it in no wise affects the legal consequence of taking title from a fraudulent grantor, whether the purchaser had conscious cognizance of the fraud or the established facts require the legal inference that he had notice.

For, in contemplation of law, a purchaser has notice not only of what is definitely communicated to him, but all that a proper use of that information would enable him to obtain, if of a character to attract the attention and stimulate inquiry on the part of an ordinarily prudent man.

Support for this general proposition may be found in *Williamson* v. *Brown* (*supra*); *Acer* v. *Westcott* (46 N. Y. 384); *Baker* v. *Bliss* (39 id. 70); *Reed* v. *Gannon* (50 id. 345); *Bennett* v. *Buchan* (76 id. 386); *Kirsch* v. *Tozier* (143 id. 390).

The principal case relied upon by the appellants in support of their proposition, that a purchaser for value must have actual notice of the fraud of his grantor, is *Stearns* v. *Gage* (79 N. Y. 102), in which the rule of *Williamson* v. *Brown* is quoted with approval, as it has universally been by the courts of this State. The court, however, did say that when a valuable consideration has been paid, actual notice is required; that circumstances to put the purchaser on inquiry when full value has been paid are not sufficient.

The action was brought to set aside deeds of real estate, made by an insolvent debtor, upon the ground that they were fraudulent as against creditors; and the court, after quoting the provision of the statute relating to fraudulent conveyances, asserted that "this plainly means that actual notice shall be given of the fraudulent intent or knowledge of circumstances which are equivalent to such notice. Circumstances to put the purchaser on inquiry, where full value has been paid, are not sufficient."

This decision seems to have been induced by the wording of the statute, but however that may be, it created an exception to the general rule asserted by *Williamson* v. *Brown*.

That it was not intended to do more, appears not only from the fact of the citation of the rule of *Williamson* v. *Brown* in the opinion, but later on that court, speaking through Judge RAPALLO in *Parker* v. *Conner* (93 N. Y. 118), discussed both cases.

After citing the rule stated in *Williamson* v. *Brown*, and that case, among others, as authority for it, the court continued :

"The questions in such cases are, *first*, whether the facts were sufficient to put the party on inquiry? and, *second*, did he fail to exercise due diligence in making the inquiry? An affirmative answer to these two questions charges the party with notice as matter of law; but the notice, in all such cases to be found in the books, relates to some actual outstanding title, *lien or equitable interest.* Such outstanding rights of third parties, though prior in point of time to the title acquired by a purchaser, are often cut off by the operation of the recording acts, and the doctrine of constructive

notice has been most frequently applied to that class of cases, so as to deprive the purchaser of the protection which those acts afford to purchasers in good faith and without notice.

"We have not been referred to any case where the doctrine of constructive notice has been applied, so as to charge a purchaser of land, who has paid a valuable consideration, and was, in fact, innocent of any guilty knowledge, with notice that his grantor made the conveyance with intent to defraud creditors at large, having no *special lien or equity.*"

Thus, the court distinctly marked out the limitations of *Stearns* v. *Gage* and recognized *Williamson* v. *Brown* as authority for the general rule which includes cases like this, where an equitable interest is affected by the conveyance.

*Farley* v. *Carpenter* (27 Hun, 359) was within the exception and, therefore, governed by *Stearns* v. *Gage.*

*Jacobs* v. *Morrison* (136 N. Y. 101) was an action to recover a deposit of purchase money, on the ground that the proposed vendor's title was affected by fraud against the general creditors of his vendor.

Naturally, therefore, *Stearns* v. *Gage* was invoked as authority for the legal proposition involved with its assertion that notice of fraud to be effectual to avoid the title must be actual.

But the learned judge who delivered the opinion of the court was careful to make clear that he intended it to be understood that the term "actual notice" was used in a sense broad enough to include presumptive notice, for he said : "As well under the statute as at common law, circumstances to put the purchaser on inquiry, who pays full value, are insufficient to affect the title, unless they are equivalent to a notice of fraudulent intent."

*Bush* v. *Roberts* (111 N. Y. 278) is the only other case cited by appellants where the controversy related to real property, and as it was an action by a creditor to set aside a conveyance on the ground that it was made with intent to defraud the creditors, it was within the exception created by *Stearns* v. *Gage.*

It follows that the Special Term did not err in invoking the rule of *Williamson* v. *Brown.*

It is suggested, rather than insisted upon, that the proceedings, had on the compulsory accounting of the trustee, are *res judicata* of

the matter involved in the present issue.    There are several reasons why that adjudication is not a bar to this action.

It is true that objections were made on the accounting that. Hernz, in violation of his duties as trustee, had permitted this property to be sold at much less than its actual value, and that they were subsequently, but after evidence had been taken, withdrawn. But the remaindermen were not represented on the accounting. Neither of the defendants Blood or Koss was a party to the proceeding, nor in any way in privity, as to the matters therein adjudicated, with any of those who were parties; and necessarily the effect of the alleged fraud upon the title of Mrs. Blood and her vendee was not adjudicated.

Fannie K. Koss, the present holder of the legal title, was a daughter of Mrs. Blood, and as she did not pay any money for the property, the court held that her title was no better than that of her grantor, because not a purchaser for value.   The trial court, however, found, at the defendants' request, "that the consideration for the said conveyance was the consideration of blood relationship and the approaching marriage of her said daughter to Charles G. Koss."

If the record was otherwise silent upon this subject an interesting question would be presented, whether Mrs. Koss should not be held to be a purchaser for value.   Marriage is a valuable consideration, and it has been held that a voluntary conveyance, intended as a settlement for a child of the grantor, which is, as against a subsequent purchaser, void, may be validated by a valuable consideration intervening, and that such consideration is furnished if a person be induced to marry her on account of the provisions made for her in the deed.   (*Sterry* v. *Arden*, 1 Johns. Ch. 261.)

An ante-nuptial settlement of lands, though made by the settler with the design of defrauding his creditors, will not be set aside in the absence of the clearest proof of his intended wife's participation in the fraud.   (*Prewit* v. *Wilson*, 103 U. S. 22.)

Other cases illustrative of the general proposition that marriage constitutes a valuable consideration are *Peck* v. *Vandemark* (99 N. Y. 29) and *Wright* v. *Wright* (54 id. 437.)

But there stands in the way of a consideration of this question the fact that this finding constitutes an exception to the general rule, which requires appellate courts to be governed by the

findings made, unless they are against the weight of evidence. The record discloses that in the early part of the trial certain questions relating to the admissibility of testimony were raised, which led to a discussion between court and counsel whether Mrs. Koss was a *bona fide* purchaser for value. And one of the results of that discussion was the following admission, which was placed upon the record : "It is admitted that Miss Fogg (now Mrs. Koss) has the title by gift for good consideration, she being the daughter, and the consideration one of blood instead of money."

By this admission the element of marriage was entirely eliminated from the question of consideration, and it was conceded that the only consideration was one of blood. This admission the plaintiff had a right to rely upon, and he did, offering no further evidence upon the subject. The defendants apparently had no thought of changing their position during the progress of the trial, for we find no request to change the form of the admission, which they had formally made in open court, nor do we find from the oral testimony of witnesses that any open effort was made to inject into the record a further element of consideration.

Under such circumstances the party making the admission is bound by it, and cannot thereafter contest it in the action.

An appeal to findings of fact by the court, which seem to contradict, qualify or limit the admission made, will not avail him. (*Oliver* v. *Bennett*, 65 N. Y. 559.)

As the judgment requires the plaintiff to reimburse the defendants Blood and Koss for the moneys invested by them, and to place them in *statu quo* they have no just ground of complaint.

I advise an affirmance of the judgment.

Judgment reversed and new trial granted, with costs to appellant to abide event.