to prevent others from passing over the same, or to forcibly remove them therefrom. It has neither duty nor right in that regard. It may not treat such persons as trespassers upon its property, and employ physical force in the enforcement of its rights.

In this connection it will not be out of place to say that it is a matter of current history that public corporations in the employment of public franchises have recently been subjected to great loss, and the public to irreparable injury, from acts of violence done by ignorant and misguided men under the pretext that such corporations were in some way violating their duties, or committing breaches of contracts or other obligations. In such instances the courts have not been slow, or the executive of the state backward, in condemning and punishing the perpetrators of such acts of violence. The defendant is among the last that should invoke the methods of the mob in attempting the enforcement of its rights.

I do not deem it necessary on this motion to decide whether certain cars operated by the plaintiff and objected to by the defendant are or are not strictly within the terms of the agreement, or whether the use and service thereof has been consented to by the defendant. The motion to continue the injunction is granted upon the view that the defendant has not the right to decide for itself the questions involved in this controversy, and to enforce compliance therewith by physical force; that it should have resorted to the courts for the protection of its rights and the justification of its claims.

I have not been referred to any authority that is directly in point and clearly supporting the positions here taken, and I have, therefore, made the decision to rest upon general principles which I believe to be matters of common acceptance among law-abiding persons. The following, however, are a few of the authorities that have led me to the conclusions to which I have arrived: Atlantic & Pacific Telegraph Co. v. Baltimore & Ohio R. R. Co., 46 N. Y. Super. Ct. 377; Sickles v. Manhattan Gas-Light Co., 64 How. Prac. 33; Electric Construction Co. v. Heffernan (Sup.) 12 N. Y. Supp. 336; McEntee v. Kingston Water Co., 165 N. Y. 27, 58 N. E. 785; Davis Machine Co. v. Robinson, 41 Misc. Rep. 329, 84 N. Y. Supp. 837.

Let an order be entered continuing the injunction during the action, with costs to abide the event.

Ordered accordingly.

---

(97 App. Div. 233.)

NATIONAL FIRE INS. CO. v. SULLARD.

(Supreme Court, Appellate Division, Second Department. September 29, 1904.)

1. INSURANCE—AGENCY—EXPIRATION REGISTER—PROPERTY RIGHTS.

The expiration register kept by a fire insurance agent giving the names of the insurers with which policies were placed and the name and residence of the insured, term and date of expiration of the term, and other collateral memoranda, is his own property, and hence an insurer from whom he has had the appointment as agent cannot, on severing relations and a sale of the agent's business, control or limit the use of the register by the agent's vendee in soliciting business from its policy holders, so long as the vendee does not use for the purpose information gathered exclusively from the insurer's property.

2. SAME—AGENCY BUSINESS—SALE.
    The business of an insurance agent who represents several companies, and whose customers or so-called clients leave the matter of the selection of the company entirely to the agent, is vendible.

Appeal from Special Term, Westchester County.

Action by the National Fire Insurance Company against Benjamin E. Sullard to have certain daily reports and other printed memoranda which had been delivered by a former agent of plaintiff to the defendant adjudged the property of the plaintiff, and for an injunction restraining defendant from parting with possession thereof. From an interlocutory judgment for plaintiff, defendant appeals. Modified.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

John F. Brennan (Hull Greenfield, on the brief), for appellant.
Ralph E. Prime, for respondent.

HOOKER, J. In or about the month of August, 1900, Albert K. Shipman was appointed the local agent of the plaintiff, the National Fire Insurance Company, at Yonkers, N. Y., and from that time until July, 1903, was engaged in the business of writing policies of fire insurance in that city for persons whom he solicited, or who solicited him in that behalf. During that time he was also the agent of other fire insurance companies. At the time of his appointment by the plaintiff he received from it certain written "instructions to agents," in which notice was given him that he would be required to enter the exact copy of the written portion of every policy in the "policy register," together with the indorsements upon such policies, rates of premium, and other matters in connection with the business. He was also instructed that all business done for the plaintiff must be reported to the home office of the company at Hartford on the day of the transaction, and that reports of policies, assignments, transfers, and the like should be placed upon the blanks furnished by the plaintiff for that purpose. These blanks are known as "daily report blanks." Although supplied with the policy register, Shipman did not undertake to use it. Soon after his appointment he was visited by the special agent of the plaintiff, and by him given permission to keep a duplicate of the daily reports sent in to the head office upon the daily report blanks, in the place and stead of the policy register. It appears that the details of the policies written were set forth more at large upon the daily report blanks than would have been the case in the policy register. These duplicate daily reports he kept in permanent form in a "daily report case," and they appear to have served the purpose of a policy register completely. When Shipman went into the business of writing fire insurance he acquired this business from the defendant, who had been a fire insurance agent in the same office prior to the month of August, 1900, and from him Shipman got, in connection with the papers and the business transferred to him, a blank book known as an "expiration register." This book had been supplied to the defendant some time prior to the year 1900 by a fire insurance company other than the plaintiff. It contained 250 pages, ruled in columns for convenience of entering therein all particulars of policies of fire insurance, had separate and

appropriate columns for the policy number, the name of the company with which the policy had been placed, name and residence of the insured, date of the payment of premium, term and date of expiration of the term, the amount insured, rate and amount of premium, and other collateral memoranda. Into 196 pages of this book had been written, at the time of the trial of this case, information such as has been mentioned. Pages 112 and 196 contained such information as to the policies written by Shipman as agent for the plaintiff, and also as agent for other fire insurance companies. Information as to policies of the several companies was commingled. On or about the 5th day of June, 1903, by an instrument in writing, Shipman, in consideration of the sum of $1,000, assigned and transferred to the defendant "his insurance business and the good will thereof, including the expiration register, the daily reports, and the daily report case now owned by the said Shipman, and all other papers and documents relating thereto." Shipman covenanted and agreed that the premiums of insurance then in force amounted to upwards of $7,000. About the time of this sale the defendant called at the office of the plaintiff company with the request that he be appointed its local agent at Yonkers. The plaintiff, however, refused to grant the request, and demanded from the defendant the duplicate daily reports, which had been in the possession of Shipman, kept by him pursuant to the written instructions he had received from the company, and all other property that belonged to the plaintiff. Upon his refusal he was informed that the company would fight for the property, and this action was brought, seeking a judgment that the daily reports and other written or printed memoranda, information, and particulars delivered by Shipman to the defendant be adjudged to be the property of the plaintiff, and for an injunction restraining the defendant from parting with the possession thereof, taking copies thereof, or allowing others to do so, or allowing any person to inspect them, and enjoining him from soliciting, inducing, or endeavoring to induce any persons named in the said papers to take insurance with any other company than the plaintiff. On the trial counsel for the plaintiff stated: "Lest your honor should get it too broad, we are asking for an injunction against his using at all the information with reference to the business of the plaintiff, which information he obtains from any of the property of the plaintiff." The court then asked, "Exclusively, you mean?" to which plaintiff's counsel replied, "Oh, yes; if he gets it from other information, we cannot complain." The trial resulted in an interlocutory judgment for the plaintiff decreeing that the plaintiff was the owner and entitled to the possession of the duplicate daily reports, and all written, or partly written or partly printed, memoranda concerning plaintiff's business and policies, of the expiration book, and of any copies, records, or memoranda taken from any of such books or papers. It further adjudged that the plaintiff recover the same of the defendant, and further adjudged that the defendant, his agents, servants, attorneys, and all other persons acting or who have acted with his knowledge, be enjoined from delivering to any other person than the plaintiff, or allowing any other person to take the books and papers referred to, and from exhibiting the same to any person, or allowing any person to make copies thereof or take any

memoranda therefrom, or from using, examining, or consulting them, or doing any act founded upon information derived therefrom, and enjoining him from soliciting, inducing, or endeavoring to induce any person, partnership, or corporation named in any of said books, reports, memoranda, information, particulars, or in any copy of any thereof or taken therefrom, to take insurance with any other than the plaintiff. The interlocutory judgment also made perpetual a temporary injunction which had been granted in the action.

Prior to the trial, and again upon the trial itself, the defendant offered to return to the plaintiff the copies of the daily reports which had come to him through Shipman, and all memoranda or copies he had taken therefrom. The plaintiff declined to settle the action in that way, claiming its right to the possession of the expiration register and to an injunction restraining the defendant from using any of the information derived exclusively from those papers and books, and upon this appeal we do not understand that the plaintiff seriously contends that the defendant is not the legal owner and entitled to the possession of the copies of the daily reports which Shipman made during his agency, pursuant to the instructions received from him by his principal, upon the blanks furnished by it. Our opinion is that the plaintiff was not the owner of the expiration register, nor entitled to its possession, and hence not entitled to enjoin the defendant from the use in any lawful manner of the information derived from the expiration register. As to the balance of the books, papers, and memoranda, including the copies of the daily reports, the plaintiff is their owner, and this seems to be conceded; and the plaintiff is entitled to its injunction against the defendant restraining him from using the information he obtains exclusively from them in soliciting business from policy holders in the plaintiff company. So far as the judgment appealed from treats of the expiration register, however, it is wrong, and must be modified by eliminating its directions in respect to that book.

The uncontradicted evidence tends to show, and the custom is so universal that the court may take judicial notice (Hutchinson v. Manhattan Co., 150 N. Y. 250, 256, 44 N. E. 775; Merchants' Nat. Bank of Whitehall v. Hall, 83 N. Y. 338, 344, 38 Am. Rep. 434; Agawam Bank v. Strever, 18 N. Y. 512; Bookman v. N. Y. E. R. R. Co., 137 N. Y. 305, 33 N. E. 333; Frace v. N. Y., L. E. & W. R. R. Co., 143 N. Y. 182, 38 N. E. 102; Anderson v. Blood, 86 Hun, 244, 246, 247, 33 N. Y. Supp. 233), that the business of a fire insurance agent, at least in the smaller cities and towns, is to represent contemporaneously several insurance companies, and consists in soliciting persons to permit them to place insurance for them, or in being solicited by those desirous of being insured for the same purpose. Only in rare cases do those who seek insurance express preference for any one fire insurance company over another, or request that their insurance be placed with any particular company. The proof in this case tends to show that for the 3½ years Shipman was the agent of the plaintiff and other companies he was rarely, if ever, requested to place insurance with any particular company, and exercised his own judgment in determining with which of the insurance companies he represented he would place the insurance. The custom is too well established, and the record in this case contains

no evidence to warrant the presumption that the practice of Shipman or the similar practice of other insurance agents is in any manner reprehensible, or other than the insurance companies themselves expect on the part of their agents. Owing to this practice, it may be said the business of an insurance agent who represents several companies, and whose customers, or so-called clients, leave the matter of the selection of the company entirely to the agent, has a well-recognized value, the subject of sale, whose sale is only to be defeated by the refusal of the insurance company to appoint the vendee as its agent, or the refusal of the customers of the vendor to patronize the new agent.

The only fair inference in this case is that the expiration book was originally manufactured for the purpose of enabling fire insurance agents, for their own purposes, and not for the benefit of the insurance companies they represent, to keep track of their customers and the business of those customers with themselves. It was given to this defendant before he sold out to Shipman six or more years ago, and contained a ruled column appropriate for inserting the name of the insurance company with which the several policies of insurance were placed. This very circumstance seems to me to negative an intent upon the part of the insurance company which presented him with the book, and an intent on the part of either the defendant or Shipman, that the register was to be kept for any other purpose than as the personal legitimate memorandum of the agent. The plaintiff's special agent Stone seems to have treated the book in the same light, for, although he knew of its existence, and had seen it in Shipman's possession while making his regular calls upon him, did not include it in his demand for papers from the defendant upon refusing the defendant's offer to represent his company. His evidence clearly indicates that when visiting Shipman in his regular calls he attached no importance to the expiration register as a writing, memorandum, or book of the plaintiff, or in any respect to plaintiff's business, to which the plaintiff was not entitled honestly and without violation of his confidential relations and the loyalty an agent is said to owe his principal.

It must go without saying that a grocery clerk may not lawfully surreptitiously copy the names of his employer's customers from the latter's books of account for use in soliciting away the employer's customers after the clerk shall have left the employ; but nothing is to prevent legal title of such copies passing to the clerk, provided the employer expressly permits the copies to be made, or tacitly allows it, seeing it while it is being done, and knowing the purpose which it is meant to serve. The point that the respondent makes that Shipman kept this expiration register pursuant to instructions received from the plaintiff is not well taken, for the reason that the instruction was to keep such a "report" to which attention had been called. This was the only record of plaintiff's Shipman was required to keep. While he did not keep the record, with the permission of the plaintiff's agent he kept copies of the daily reports, and this fulfilled the purpose of the record, and the inference is that it accomplished the purpose even better than the record would have done. In preserving these copies of daily reports Shipman discharged his duty in that respect to the plaintiff.

It cannot be said from any facts proved in the record, and from the

customary manner in which fire insurance agents conduct their business, that such insurance companies have property rights in the renewal of the policy by the customer after the expiration of the term; nor did Shipman or the defendant at any time undertake with the plaintiff that they or either of them would renew policies which they had written for the plaintiff in the same company. The policy holder was free to renew with any company he might see fit, or not to renew his policy at all. Shipman procured the insurance for the plaintiff in the first place from customers or patrons of his own. It is entirely lawful for the defendant, so long as he does not use for that purpose the information gathered exclusively from the plaintiff's property, to solicit these customers and patrons in behalf of any insurance company he might see fit—the plaintiff or any other—so long as he does not abridge the enjoyment by the plaintiff of its beneficial interests in existing contracts of insurance by inducing improper cancellations.

The judgment should be modified in accordance with these views, and, as modified, affirmed. All concur; BARTLETT, J., in result.