Argued April 19; affirmed October 17, 1939

# PORT INVESTMENT CO. *v.* OREGON MUTUAL FIRE INSURANCE CO. ET AL.

(94 P. (2d) 734)

[ 1 ]

In Banc.

*Calvin N. Souther* and *H. B. Beckett,* both of Portland (A. E. Wheelock and Wilbur, Beckett, Howell & Oppenheimer, all of Portland, on the brief), for appellant.

*W. Lair Thompson,* of Portland (Joseph, Veatch & Bradshaw and McCamant, Thompson, King & Wood, all of Portland, and Francis E. Marsh, of McMinnville, on the brief), for respondents.

4

LUSK, J.  By the contract dated February 13, 1932, the defendant appointed the plaintiff its agent in a designated portion of Multnomah county, Oregon, and the plaintiff agreed to pay to certain insurance companies other than the defendant sums totalling $740.09, and to the plaintiff $4,000, and the additional sum of $7,209.37 in thirty equal monthly installments.  In consideration of such payments the defendant agreed to appoint the plaintiff as agent "with all the powers, rights and privileges granted to its soliciting agents by said Oregon Mutual Fire Insurance Company, pursuant to its charter, by-laws, rules and regulations." The agency was made exclusive in the territory designated.  The agent's commission was fixed at 20 per cent of the gross premium, with the right in the insurance company to change the commission at any time.  The insurance company reserved the right to terminate the agency at any time for any cause deemed by it suffi-

cient, but agreed that if the agency should be terminated before all the payments had been made, pursuant to the terms of the contract, the amounts theretofore paid would be repaid to the agent. The plaintiff agreed to devote itself exclusively to the service of the defendant in the following language:

"The agent hereby promises and agrees with the principal that it will devote its best service and energy to promoting the business of the principal. That it will at all times, to the best of its ability, build up and increase the business of the principal. That it will use its best efforts to renew all policies of the principal now in force and to extend and increase the business of said principal. That it will give preference to the principal over any other insurance company in placing any insurance business which is of a class written by this principal. It is the intention of both of the parties hereto that the agent herein will furnish business to no other insurance company except in such instances as it is either impossible or disadvantageous to the principal that such business be placed with the principal.

It was stipulated that the contract and appointment should constitute "a personal service contract" and should be so construed by the parties. The contract is silent as to the rights of the parties with respect to expirations after the relationship should cease. But the plaintiff, as we have said, contends that this matter is governed by a usage which vests the ownership of the expirations exclusively in the agent. Whether that contention has been sustained, we shall now consider.

The plaintiff called as witnesses thirteen agents for fire insurance companies transacting business in Portland and other cities in Oregon, who testified in substance and effect that there is a long-established general custom in this state, pursuant to which, on the termina-

tion of a fire insurance agency, expirations are treated as the exclusive property of the agent and the insurance company is denied the privilege of using them for purposes of solicitation. The usage is shown to apply both to a business purchased and to one produced or created by the agent whose rights are in question. Some of these witnesses admitted that they did not know whether the custom obtained among mutual companies, but nine of them testified that it was observed alike by stock or "old-line" companies, and mutual companies which use the agency system, as does the defendant. There are allusions in the record to a contract between insurance companies and an organization known as the National Association of Insurance Agents, under which the ownership of expirations by the agents is recognized, but the testimony is that the usage exists irrespective of the contract.

All the testimony on behalf of the defendants on this subject was given by its own officers and agents. That the alleged custom was observed to some extent by stock companies was conceded, though it was claimed, as testified by Mr. Apperson, president of the defendant corporation, that "it is the theory but not the practice". Witnesses for the defendant, however, cited only one instance of failure by a stock company to recognize the usage. It was asserted that the usage did not apply to mutual companies, and it was proved satisfactorily that the Oregon Mutual Fire Insurance Company had never observed it, and that it was its practice to notify its agents that it claimed the right to use the expirations.

None of the witnesses was asked whether the usage was observed where the agreement between the agent and the insurance company required the former to

promote the business of his principal to the exclusion of all others. Some were asked whether they conducted their business under such an agreement, and answered in the negative. One, Mr. Thomas, a member of the firm of Dooly & Co., testified that he used his own discretion entirely in selecting the particular company in which a policy would be placed and that that is the usual way of conducting a fire insurance agency.

The precise nature of the question to be decided must be kept in mind. The defendant, as stated, does not claim that the plaintiff has no interest in the expiration information. It concedes the plaintiff's right to use it, but also asserts that right for itself. The plaintiff, however, contends for an exclusive right free from interference by the defendant. For a proper determination of that question in the light of the particular facts of this case, a review of the general law upon the subject is deemed advisable.

It is an established principle, subject to certain modifications under special circumstances, that an employee or agent who, on the termination of the relationship, takes a list of the customers of his employer or principal and uses it in soliciting the customers he had served during the employment is guilty of a breach of obligation, which a court of equity will enjoin. Nims on Unfair Competition, pp. 428 *et seq.* In what we deem to be the best considered decisions on the question, however, this rule has not been applied to agents for fire insurance companies, but it has been held that, in the absence of an agreement to the contrary, the agent has a property right in the expiration information which he compiles and keeps as a part of his records. The reason underlying this exception to the general rule is that a fire insurance agent ordinarily does not repre-

sent merely one company, but several, and solicits business, not on behalf of a particular company, but on behalf of his agency, and, when he has obtained the business, uses his own judgment in placing the insurance with one or more of the companies which he represents. This not only appears in the record in this case, but is a fact which may be judicially noted. *In re Chapman*, (D. C. W. D. Ky.) 50 F. (2d) 252. In that case the court, in denying an application of several insurance companies for an order directing the bankrupts, who had conducted a general fire insurance business, to turn over to the respective companies all their office copies of the daily reports of the policies issued by the respective companies through the bankrupts as agents, said:

"It has been developed in this case—and it is a matter of common knowledge—that a general fire insurance agent, in soliciting fire insurance business, makes such solicitation, not in behalf of any particular company, but in reality in behalf of the agency, and, after the business has been secured, the agent then allots the business to such one of the companies represented by him as he may determine. The name of the insured, the character and description of the property to be insured, the amount of the insurance, and the character of the policy, are all information gathered by the agent at his own expense and before the insurance company to which the business is subsequently allotted ever comes into the picture. It is true that, as a matter of legal fiction as between the company to whom the policy is allotted and the insured, the agent, within the scope of his authority, is deemed to represent the company with whom the policy is ultimately placed; but, as between the agent and the insurance company, this cannot very well be said to be true—certainly not to the extent of enabling a court to hold that the information thus obtained is the private and ex-

clusive property of the insurance company with whom the policy is ultimately written."

In *National Fire Insurance Co. v. Sullard*, 97 App. Div. 233, 89 N. Y. S. 934, the court recognized the right of a retiring agent to sell his expiration register, and in a suit brought by the insurance company refused to enjoin the use of the register by the purchaser. In *Miller Agency v. Home Insurance Co.*, 276 Ill. App. 418, the ownership of the expirations was held to be in the agent as against its former principal, the insurance company. In both of these cases the reason supporting the holding is identical with that stated in the Chapman case. The case of *Miller Insurance Agency v. Home Fire & Marine Insurance Co.*, 100 Mont. 551, 51 P. (2d) 628, 634, has been cited by the respondent as conflicting with these authorities. But, as we read the case, it is not in point, because it apparently deals with commissions instead of expirations. The court did in that case, however, use the following language:

"We gather from the authorities that, because of the fact that the policyholders are the customers of the agent who solicits the business and writes the policies in any company he sees fit, ordinarily the right of renewal is an asset of the agent, who cannot be deprived of his commission on renewals, while representing the insurance company in which he has written policies, by any act of the company or its other agents, but the matter is usually regulated by contract. On the other hand, if the agency is properly terminated, the right to commissions thereafter ceases, although it has been held that this is not the case when an agent withdraws from the service with the consent of the principal."

These authorities do not reach the question which must be decided here. They go no further than to give to the agent the right to use the expirations after the

termination of his agency without any intimation that the insurance company does not have the same right. The position of the plaintiff, if it is to be sustained at all, must rest upon the proof of a valid custom or usage. Such a usage has been recognized and enforced in at least one reported case: *Alliance Insurance Co. v. City Realty Co.*, (D. C. M. D. Ga.) 52 F. (2d) 271. There the court held, under the proofs adduced, that by a general custom and usage expirations are the property of the agent if he has remitted his balances and has not been guilty of fraudulent practices, but that until balances have been remitted the insurance companies have the exclusive right to dispose of the expirations. A similar custom was contended for in *Miller Agency v. Home Insurance Co.*, supra, but on that point it was ruled that the evidence was too indefinite to establish the custom. A like question arose in *Kelly v. American Mine Owners' Casualty Corp.*, 161 Va. 206, 170 S. E. 580. The trial court had refused to submit to the jury the issue of a general usage governing the ownership of expirations, and this was held to be error. But the error was found to be immaterial because it was said the agent, when he found that he would probably be discharged, but before his contract was actually cancelled, solicited and later secured an agency from a rival corporation. In that case the agent was not attempting to enjoin the insurance company from using the information, but was seeking to set off the value of the expirations against the amount due from him to his company, and the court held that he could not make the company pay for something that he was using against it.

The question of usage again arose in *Arrant v. Georgia Casualty Co.*, 212 Ala. 309, 102 So. 447. There,

the court held that the custom was contrary to the terms of the contract, which expressly gave the expirations to the company, and, further, that the custom was bad because it conflicted with established principles of law. The court was clearly right in the first ground of its decision; as to the second, for reasons which will presently appear, we withhold comment.

We have also been referred by counsel for the appellant to some unreported cases involving this question, but, since they are unreported and we have not seen copies of the opinions, we refrain from citing them.

■ A custom or usage must be ancient, notorious, uniform, not opposed to a well settled rule of law, and not inconsistent with the contract of the parties. *Coxe v. Heisley*, 19 Pa. St. 243. If the custom here relied on measures up to these requirements the court must give it effect as one of the terms of the contract and as binding on the parties as though it were written: *Hurst v. W. J. Lake & Co.*, 146 Or. 500, 502, 31 P. (2d) 186; *Simms v. Sullivan*, 100 Or. 487, 198 P. 240, 15 A. L. R. 678; *Hurst v. Larson*, 94 Or. 211, 215, 184 P. 258. The defendant insists that the asserted custom does not meet the test of uniformity or universality because the defendant has never observed it (citing among other cases *Green Mountain Log Co. v. Columbia & Nehalem River Railroad*, 141 Or. 188, 16 P. (2d) 1106), that it conflicts with established principles of the law of agency, and that it is inconsistent with the express terms of the contract.

We need not express an opinion as to the first or second of these contentions because, after careful consideration, we have reached the conclusion that to give effect to the custom in this case would be to override the manifest intention of the parties to the contract.

We do not put this conclusion on the ground relied on by counsel for defendant and which became the basis of the trial court's decree dismissing the suit. That was the clause in the contract previously quoted, reading as follows:

"In consideration thereof, the principal hereby promises, undertakes and agrees to appoint said agent as the agent of said Oregon Mutual Fire Insurance Company for said district with all of the powers, rights and privileges granted to its soliciting agents by said Oregon Mutual Fire Insurance Company, pursuant to its charter, by-laws, rules and regulations".

■ The argument is that this language refers to, or at least should be construed to include, a rule of the defendant company, claimed to have been shown by the evidence, which refuses to recognize an agent's ownership of expirations. We think this interpretation is of doubtful validity, and that, instead of importing a limitation on the rights of the agent in respect of such a matter as that under consideration, the clause is intended to define the powers and authority of the agent in its dealings with the general public. However that may be, there is other language in the contract, not so much stressed in argument, which must control our decision.

■ As we have seen, the rule that fire insurance agents have a property right in expirations derives from the customary manner in which the business of an agent is carried on. He solicits for his agency, not for an insurance company, and parcels out the business among the various companies he represents at his own discretion. This practice is no doubt also the genesis of the custom which, it has been held, further enlarged the rights of the agent in the expirations. The opinion

in *Alliance Insurance Co. v. City Realty Co.*, supra, calls attention to the fact that the agent represented several insurance companies and did not ordinarily solicit business for a particular company, but placed any policy with such company as it selected. This case presents the opposite situation. Although the Port Investment Company represented other insurance companies, it was inhibited by the terms of its contract from placing any business with them that could be placed advantageously with the defendant, and it agreed to use its best efforts at all times to build up the business of its principal. Its duty, under the contract, was primarily to solicit for and on behalf of the Oregon Mutual Fire Insurance Company, and not on its own behalf. The meaning and purpose of these provisions is plain, and, it seems to us, exclude the idea that on the termination of the agency the plaintiff could walk off with the business that it had solemnly agreed to build up on behalf of the defendant. We are unable to see how, consistently with the duties which the plaintiff freely and voluntarily undertook in the agency contract, it can be heard to say that it now has the right not only to solicit the policyholders whom it secured for the defendant, but also to deprive its former principal of the fruits of the business which was promoted and built in pursuance of that undertaking.

■■ It is ordinarily stated that a custom or usage inconsistent with the plain and unambiguous terms of a contract cannot be interposed to contradict or qualify its provisions: *Interior Warehouse Co. v. Dunn*, 80 Or. 528, 534, 157 P. 806, and cases there cited. But it is also the law that even where a contract is indistinct and uncertain in its terms it cannot be contradicted by usage: 17 C. J. 511, § 77; *American Lead Pencil Co. v.*

*Nashville, C. and St. L. Ry.*, 124 Tenn. 57, 61, 134 S. W. 613, 32 L. R. A. (N. S.) 323. It is sufficient ground for rejecting the custom that it is excluded by necessary implication: 27 R. C. L. 173, § 20; *Shaw v. Ingram-Day Lumber Co.*, 152 Ky. 329, 334, 153 S. W. 431, L. R. A. 1915 D, 145. Thus, notwithstanding there is no mention in the contract of what shall become of the expirations on the termination of the agency, the provisions under consideration make it impossible to hold that a custom giving them exclusively to the plaintiff may be engrafted on the contract as one of its terms.

■ The plaintiff not only relies on the asserted custom, but urges also that it bought and paid for the expirations. It points to the fact that the business of the Quick Agency was appraised in the Quick estate at the sum of $12,500; that the defendant brought about the transfer of the business to the plaintiff; released its claim against the estate in a sum in excess of $11,000; and in turn was paid by the plaintiff approximately the amount of its claim. The defendant, answering this contention, rests upon the language of the contract, and says that the sole consideration for the money paid by the plaintiff was the privilege of acting as its agent.

We think that the position of neither party can be sustained in its entirety. We are not precluded by the language of the contract, stating that in consideration of the payments to be made by the plaintiff the defendant ''agrees to appoint said agent as the agent of the Oregon Mutual Fire Insurance Company, etc.'', from looking at the entire transaction in order to determine what was the actual intention of the parties in this regard, or more precisely what they actually did. It will be remembered that on the same day that the agency contract was signed the defendant addressed

to the plaintiff and to Thorne & Walrad, the agents having the territory in eastern Multnomah county, a letter which begins:

"The undersigned hereby defines the territory in which its insurance shall be written respectively by you as follows:".

The respective territories are defined, and the letter concludes with this sentence:

"The above division is made upon the express understanding that all present insurance in our company written by Thorne & Walrad shall remain the business of Thorne & Walrad, including the renewals thereof, whether in the territory assigned to them or in the territory assigned to the Port Investment Company, and that all present business written in our company by the predecessor of the Port Investment Company, whether in the territory assigned to the Port Investment Company or in that assigned to Thorne & Walrad, shall remain the business of Port Investment Company together with the renewals thereof."

This language, fairly interpreted in connection with the provisions of the contract, seems to us to mean, so far as the plaintiff is concerned, that it was entitled to commissions thereafter to be paid on all policies written by the Quick Agency, whether in its own territory or the territory of Thorne & Walrad, and was also to have the exclusive privilege of soliciting the renewal of such policies so long as the agency should continue. Unlike the transaction involving the office furniture and fixtures no instrument of transfer of the Quick business or expirations was executed. The letter of February 13, 1932, is what, on its face, it purports to be—a letter defining the territory of the agents to whom it was addressed. It contains no language which can properly be construed as vesting in the plaintiff

an indefeasible title to the expirations or anything more than the exclusive right to their use as long as the agency should continue. That this was a valuable right there can be no question. Certainly it constituted an asset which made the appointment as agent more desirable than otherwise it would have been. Only the custom relied on could have expanded the language of these writings into an exclusive title in the plaintiff to the expirations continuing into the future, after the termination of the agency, and the custom, as we have seen, is not available in this case.

If it be said that the probate records show that the business of the Quick Agency was bought from the Quick estate by the defendant and by it sold to the plaintiff, and that this evidence was competent—a point we do not decide—, it still does not follow that this business consisted of the exclusive right to solicit the policyholders whose names appeared on the Quick expiration register, for the terms of the defendant's contract with Quick are not in the record. The evidence is that it was the defendant's practice to inform its agents that it claimed the right to use the expirations. Notwithstanding this practice, the expirations in the hands of the administrators of the former agent were of value to the estate if they could be disposed of to another agent satisfactory to the Oregon Mutual Fire Insurance Company: *Kelly v. American Mine Owners Casualty Corporation*, supra; 32 C. J. 1085, § 165, and cases there cited. This had not infrequently been done by retiring agents of the Oregon Mutual Fire Insurance Company. At the same time, since the defendant could not prevent the use of the expirations by anyone to whom the estate might sell them, it was to its advantage to acquire them and to place them in the hands of its own agent. Very

likely, as counsel for the plaintiff argue, no one would pay for the mere privilege of representing an insurance company as its agent, but this is not the true construction of the transaction. The plaintiff was paying for the privilege of representing the defendant insurance company not merely, but with the valuable right added, of the exclusive use of the expiration register that came from the Quick estate, as long as the agency continued.

In effect the transaction was not different from several others shown by the record in which a retiring agent of the Oregon Mutual Fire Insurance Company sold his business to another, who thereupon became the agent of the company.

■ A further contention of the plaintiff is based on a clause in the contract which provides that, if the agency should be cancelled before completion of the stipulated payments, the moneys paid should be refunded. It is the plaintiff's theory that this agreement was adopted in order to protect it from loss of the expirations in the event of cancellation of the agency before the purchase price should have been paid in full. The defendant argues that the provision was inserted in order to protect the plaintiff against the liklihood of early cancellation. The plaintiff's position was attempted to be supported by oral testimony, but clearly, on settled principles governing the construction of written contracts, such testimony was inadmissible and cannot be resorted to in order to determine the purpose behind the language, which is plain enough and needs no construction. Viewing the transaction by its four corners, we are unable to find that the plaintiff bought anything else than the exclusive right to use the Quick expiration records during the continuance of the agency, and we are not persuaded that the clause of the contract

in question should lead to a different view, since the purpose of its inclusion suggested by the defendant is quite as reasonable as that put forward by the plaintiff.

11. In our consideration of this case, an important one both from the standpoint of the legal principles involved and the amount in controversy, we have not failed to examine with the utmost care every contention advanced by able counsel for the respective parties. But we have not thought it necessary or advisable in this opinion to notice them all or to set forth all the results of our labors. It has seemed sufficient to discuss those questions only, which, in our judgment, had controlling importance. Many of the questions presented are far from being easy of solution. Our conclusion, as indicated by what has been written, is that the decree of the circuit court must be affirmed. In that decree no costs were allowed. The plaintiff has prosecuted this appeal in good faith and with much justification, and a like order with respect to costs will therefore be made in this court.

RAND, C. J., and ROSSMAN, KELLY, BELT, BEAN and BAILEY, JJ., concur.