**COTTINGHAM et al. v. ENGLER.**

No. 13447.

Court of Civil Appeals of Texas. Dallas.

Jan. 28, 1944.

D. A. Frank, of Dallas, for appellants.

William H. Neary and Thompson, Knight, Harris, Wright & Weisberg, all of Dallas, for appellee.

LOONEY, Justice.

This appeal is from a judgment permanently enjoining appellants in the respects hereinafter disclosed. The material facts leading to the litigation are these: The I. Reinhardt & Son local insurance agency, in business in Dallas for fifty years prior to the transactions here involved, was owned ninety per cent. by the legal representatives of the estate of Chas. Tucker, who died in May, 1942, and ten per cent. by J. L. Cottingham. Effective September 1, 1942, the owners sold the agency to appellee; the contract of sale recited that, in consideration of $51,000 cash paid by appellee, the owners transferred and conveyed to him (1) the exclusive property right in and to expirations of all policies of insurance then in effect (Sept. 1, 1942), written by or through said agency as local recording agent, or otherwise, or obtained by it upon applications submitted to or by insurance companies represented by the agency, whether such business be handled or controlled as brokers, agents, or otherwise; (2) the exclusive property right to control and solicit renewals of all said policies in force (Sept. 1, 1942); (3) all books, records, correspondence, copies of policies, daily reports, and all other data of the agency, and the exclusive right to utilize the same in connection with the operation of an insurance agency; (4) the good will of the said I. Reinhardt & Son agency, together with all benefits naturally incident thereto; (5) the exclusive right to use the name I. Reinhardt & Son in connection with the operation of an insurance agency, including, under subdivisions (6), (7) and (8),

certain properties of negligible value, such as 1941 model Ford automobile, furniture, fixtures and office equipment, and the assets of a defunct corporation.

After the sale, Cottingham remained with the agency as an employe until October 1, 1942, when he resigned, and H. Whitney Barham, who for some time prior to sale had served the agency as an employe, continued until about November 1, 1942, when he resigned; and immediately thereafter, he and Cottingham formed a partnership styled Cottingham & Barham, for the purpose of conducting the same character of business as that conducted by the I. Reinhardt & Son agency.

Appellee instituted the instant suit, alleging the facts just stated, and further that, as soon as the newly formed partnership began operations, the members thereof, in violation of express provisions of the contract of sale, solicited policyholders for renewals of policies existing on the books and records of the I. Reinhardt & Son agency Sept. 1, 1942; that by reason thereof had caused cancellation and renewal of such policies, and if permitted to continue such wrongful course of conduct, appellee would suffer irreparable damage—not only in the loss of premiums and commissions but also to the good will of the Reinhardt agency; that appellee had no adequate remedy at law, wherefore, sought appropriate injunctive relief.

After appellants joined issue, the court heard evidence and entered judgment against Cottingham individually and the partnership of Cottingham & Barham (no relief being granted against Barham individually), directing Cottingham and the partnership to refrain from soliciting the renewal of such policies; also from soliciting and thereafter renewing any such policies and from in any manner interfering with appellee's exclusive right to solicit such renewals, to which appellants excepted, gave notice of and duly perfected this appeal.

In response to the request of appellants, the court filed findings and conclusions, including therein the facts set out in the statement heretofore given, and, in addition, found that appellants, operating under the name of Cottingham & Barham, immediately after forming the partnership, began soliciting business from customers of the I. Reinhardt & Son agency, specifically solicited renewals of policies in force on the books of said agency as of the date of appellee's purchase, and renewed same in the Cottingham & Barham agency, to appellee's damage. These findings, being sustained by evidence, are adopted as our conclusions on the issue.

The court concluded as a matter of law, that unless the injunctive relief sought was granted, appellee would suffer irreparable damage in the loss of business, and to the good will of the Reinhardt agency; the court said: "I conclude finally that the plaintiff (appellee) is entitled to a perpetual injunction restraining defendant Cottingham and the partnership of Cottingham & Barham from soliciting the renewal of any insurance policy existing upon the books of I. Reinhardt & Son as of September 1, 1942, from soliciting and by reason of such solicitation renewing any such policy, and from interfering in any manner with the plaintiff's right to solicit the renewal policies existing on the books of the Reinhardt agency as of September 1, 1942."

Seemingly, appellants contend that the provisions of the sale contract giving appellee the exclusive right to solicit renewals of policies issued by the Reinhardt agency existing September 1, 1942, are void because in conflict with the Anti-Trust Code of the State, Vernon's Ann.Civ.St. art. 7426 et seq., in that they restrict the free pursuit of an authorized or permissible business, and tend to prevent or lessen competition in the business of insurance.

The authorities cited by appellants sustain their contention, if the contract under consideration offends the anti-trust law in the respects mentioned, but we do not think so, as the former owners of the Reinhardt agency were not required by any provision of the sale contract to abstain for any period of time, or in any given locality, from entering the local insurance agency business in competition with appellee or any of the other 150 insurance agencies doing business in the City of Dallas. Appellee does not complain of the fact that Cottingham, or the firm of which he is a member, has engaged in a competitive business; his complaint is that, in violation of explicit provisions of the sale contract, by soliciting and renewing policies in existence upon the books of the Reinhardt agency Sept. 1, 1942, appellants were recapturing and tak-

ing from appellee property, and depriving him of property rights purchased, for which he paid a substantial consideration.

The chief asset purchased by appellee from Cottingham and other owners of the agency, was the exclusive property right in and to the expirations of all policies issued by the Reinhardt agency in force on Sept. 1, 1942, the exclusive property right to control and solicit renewals of said policies, all books, records, correspondence, copies of policies, and all other data pertaining to said agency, the good will of said agency, together with all benefits naturally incident thereto and the exclusive right to use the name of the agency. The most valuable of these assets, in our opinion, was the accumulated data pertaining to the 5,000 policies in force at the time of the sale, coupled with the exclusive right, as against the insurance companies, to solicit renewals and place same in any company of the agency's choosing. Obviously, it was the acquisition of these valuable assets that moved appellee to pay the owners $51,000 in cash for the agency. Clearly, we think, appellee was entitled to be protected against efforts on the part of either Cottingham or the partnership of which he was a member, to recapture and take from appellee the very property and property rights sold, and for which he paid the large cash consideration.

The case of Kerr & Elliott v. Green Mountain, etc., Ins. Co., 111 Vt. 502, 18 A. 2d 164, 167, recognizes that the exclusive right of a local insurance agent to control expirations is property, within the meaning of the law, and entitled to be protected. In disposing of the case, the court quoted from Port Inv. Co. v. Oregon Mut. Ins. Co., 163 Or. 1, 94 P.2d 734, 739, 124 A.L. R. 1342, as follows: " * * * the agent ' * * * solicits business, not on behalf of a particular company, but on behalf of his agency, and, when he has obtained the business, uses his own judgment in placing the insurance with one or more of the companies which he represents.'"; proceeding, the court said: "In the insurance field the term 'expirations' has a definite meaning. As to this it has been stated: 'The record known in insurance circles as expirations is in effect a copy of the policy issued to the insured, which contains the date of issuance, name of the insured, expiration, amount, premiums, property covered and terms of insurance.'"; citing authorities, and quoting from Alliance Ins.

Co. v. City Realty Co., D.C.1931, 52 F.2d 271, 272, the court said: " 'The well-known disposition of policyholders to accept policies offered to them in renewal of, or in lieu of, expiring policies renders valuable the expiration data or "expirations" of an agency which ceases business.'" Concluding the discussion, the court said: "It, therefore, follows that in using these expirations to place the business covered by the policies here in question with other companies for which the plaintiffs were acting as agents and to thus secure themselves the continued benefits of such business, the plaintiffs were only exercising their legal rights secured to them by the terms of the agreement. Any interference by the defendant for the purpose of and tending to hinder them from so doing would be an invasion of such rights." Cases are cited that involved conflicting claims to expirations, but it seems that the courts writing on the subject were in harmony on the doctrine that a local insurance agent representing a number of companies acquires a salable asset in the nature of an exclusive right to solicit, write, and place renewals.

In Wood v. Pender-Doxey Grocery Co., 1928, 151 Va. 706, 144 S.E. 635, Wood sold his retail grocery business, together with its good will, to Doxey, who immediately transferred same to the Company, and the latter retained two trusted and efficient clerks who had served Wood previous to the sale. Within a few months thereafter Wood opened a retail grocery business in the same locality, in competition with the Company, and induced these two clerks to leave the service of the Company and re-enter his service. The Company brought an action for damages and recovered. In affirming the judgment, the Court, among other things, used the following pertinent language; it said: "When it is admitted by Wood that he solicited his old customers, and that his employees Turner and Jarvis were actively doing the same with his knowledge, consent and approval, their acts became his acts, and he has violated the contract of sale for the consequences of which he must answer." (See 2nd col. p. 637). To the same effect, see Kelly v. American Mine Owners' Casualty Corp., 1933, 161 Va. 206, 170 S.E. 580, and National Fire Ins. Co. v. Sullard, 97 App.Div. 233, 89 N.Y.S. 934.

As heretofore shown, owners of the Reinhardt agency conveyed not only the

expirations and the exclusive right to control, solicit, write, and place renewals of all policies written by the agency and in existence on Sept. 1, 1942, but the good will of the agency as well, together with all benefits naturally incident thereto, and this carried an implied covenant that the former owners would do nothing in derogation of the grant. Doctrine to this effect was announced by the El Paso Court of Civil Appeals in Shechan v. Sheehan-Hackley & Co., 196 S.W. 665, 666, where the court said: "On the other hand, that portion (of the decree) enjoining Sheehan from soliciting or inducing the dealers and manufacturers to cancel appellee's agency for and representation of them, and from doing anything to induce them from doing further business with appellee, was properly entered. Sheehan conveyed the good will of his business, which carried with it an implied covenant that he would do nothing which would derogate from his grant. Dwight v. Hamilton, 113 Mass. 175. * * * The agency contracts acquired by appellee, with right of exclusive representation in certain territory, may well be considered as an advantage or benefit acquired by appellee within the scope of this definition (of good will), and to permit appellee, by solicitation, to induce the principals of the agency contracts to cancel the same and substitute him for appellee would injure the good will of the business which he had transferred. That he was properly enjoined from doing." A similar case was presented in Mouton, Inc., v. Hebert, La.App., 199 So. 172, 175, the court adopting the rule stated in 24 Amer. Jur. (Title Good Will), Sec. 23, p. 817, said: "In making the sale, the defendant warranted the items which he sold to the plaintiff, and he could not, even by agreement, relieve himself of that warranty against his own acts. * * * We do not think it could hardly be considered fair practice for a person to sell and warrant any object of sale and then, by his own acts, seriously impair the use and enjoyment of the object by the purchaser, or substantially decrease the value of the object by his own conduct." Also see Peterson v. Johnson Nut Co., 204 Minn. 300, 283 N.W. 561. We therefore overrule the contention of appellants that the contract in question offends the Anti-Trust Code of the state in any respect.

Appellants also contend that the decree is unenforceable because it failed to name those holding policies in the Reinhardt agency on Sept. 1, 1942, whom appellants were forbidden to solicit for renewals, contending that, not being able to remember the 5,000 policyholders, they might unwittingly violate the injunction.

The secret policy information accumulated at great expense by the Reinhardt agency, and its exclusive right to use same, was one of the main assets sought to be protected by the instant suit; hence the court, seeking to protect the rights of appellee in the respects mentioned, would have defeated that purpose by requiring the public disclosure of such information. Cottingham had been connected with the agency for nearly five years prior to the sale, and Barham had been with the agency as an employe for a considerable length of time before his resignation; in view of this situation, we do not think it unreasonable to assume that these gentlemen were sufficiently familiar with the business of the agency and its clientele as to avoid violating the injunction. The decree enjoined Cottingham and the partnership of Cottingham & Barham from soliciting and renewing policies existing in the agency on Sept. 1, 1942; any one of these policyholders could have owned uninsured property, or had a policy or policies in either of the other insurance agencies doing business in the City of Dallas; in either case, appellants were free to solicit and consummate such business. So, we conclude that, if appellants exercise ordinary care to avoid violating the injunction, no occasion will arise for its violation, either wittingly or unwittingly.

Appellants also contend that, not being a party to the sale contract, Barham should not have been enjoined; that is, the partnership of Cottingtham & Barham should not have been enjoined. If the injunction had been leveled at Cottingham alone, without including the partnership, the decree, in our opinion, would have been ineffective, as Cottingham, acting through the partnership, if so inclined, could have consummated the prohibited acts. In order to render the decree effective, we think the court correctly enjoined the partnership of Cottingham & Barham. A case in point is that of Santa Monica Ice & Cold Storage Co. v. Rossier, 1941, 42 Cal.App.2d 467, 109 P.2d 382, 384; plaintiff in that case sought an injunction against the disclosure of confidential information by the sellers of a business, who were employed by another operating a partnership. A judg-

ment for plaintiff was affirmed. Disposing of the case, the court said: "The suggestion that the partnership is not subject to the remedy sought is not sound. The evidence showed that it employed the other appellants for the purpose of discovering and using the trade secrets which these employees had obtained while in the service of respondent. It appeared that the partnership was using this information to the damage of respondent. * * * It is a cardinal rule of equity that the court has power to make its decrees effective and that when it has jurisdiction of the parties and of the subject matter its decree will be complete in order to terminate the litigation if possible."

We have carefully examined all points of error urged by appellants, and finding no reversible error, the judgment of the court below is affirmed.

Affirmed.