Guy A. RENCE, Plaintiff in Error,

v.

Marvin C. BLUBAUGH, Defendant in Error.

No. 36160.

Supreme Court of Oklahoma.

June 7, 1955.

Rehearing Denied July 13, 1955.

Ross & Ross, Newkirk, for plaintiff in error.

Northcutt & Northcutt, Ponca City, for defendant in error.

BLACKBIRD, Justice.

In this case it appears that Marvin Blubaugh, who will be referred to as defendant herein, on the 3rd day of July, 1946, obtained a five year agricultural lease from the heirs of Eliza Primeaux who were then the owners of the land. The lease covered 80 acres situated in Kay County, Oklahoma. The land involved was Ponca Indian land and the lease was obtained and executed under the supervision and with the approval of the Superintendent of the Indian Agency.

The procedure for obtaining leases of Ponca Indian land is for the prospective lessee to contact the owners of the land and obtain their agreement to the lease. The agreement is then presented to the Superintendent of the Indian Agency for approval, and, if approved, it is executed under his supervision on forms prescribed by the "Indian Department." That procedure was followed in this case. The lease was for a term of five years beginning January 1, 1947, and ending on the 31st day of December, 1951.

Paragraph 23 of the lease contains the following clause:

"It is understood and agreed that the lessee will surrender, without cost, the stubble land and other land in suitable condition on which he has no grow-ing crop to be seeded to fall grain or alfalfa 5 months prior to the expiration of the lease * * *."

Paragraph 9 of the lease contains the following provision:

"* * * That lessee will harvest crops as soon as possible after maturity in order that the lessor may pasture the land or sow it to wheat * * *."

On the 2nd day of January, 1951, Guy Rence, hereinafter referred to as plaintiff, obtained from the same persons a five year agricultural lease covering the same land. The lease, under its terms, was to begin on the 1st day of January, 1952, and end the 31st day of December, 1956. His lease was identical in form and contained the same terms as defendant's lease.

Defendant, during the last year of his lease, had the principal part of the acreage sowed to wheat. He harvested and gathered the wheat and immediately thereafter plowed the stubble land and re-planted it with maize. He cut the maize crop in the middle of December, 1951, and surrendered possession of the land to plaintiff on December 31, 1951.

Thereafter plaintiff brought an action to enjoin him from gathering the maize crop. In his petition plaintiff alleged all of the above facts, and in addition thereto, alleged that by reason of the terms of defendant's lease his right to further use and farm the land from which the wheat was harvested had terminated on August 19, 1951, but that contrary to the provisions thereof, he entered upon said tract and planted it to maize without plaintiff's permission or consent. He further alleged:

"* * * that he had the right to go upon said land as of August 1, 1951, and that he desired to do so, and that defendant no longer had any right, title or interest in or to the plow land upon said leasehold. That by reason of the growing of said crop upon said land this plaintiff was unable to properly go upon said land and prepare and plant the same to wheat in the fall of 1951, for the regular annual crop of 1952."

Before plaintiff's injunction action was heard, defendant removed his maize crop

from the land and plaintiff thereafter filed an amended petition converting the action from one in equity to an action of law for the recovery of damages against defendant for wrongfully failing to deliver possession of the land to plaintiff. In addition to pleading the facts above set forth plaintiff, in said amended petition, alleged:

" * * * that it is the custom and practice as to Indian Leases of this type for the succeeding tenant to take possession of the stubble ground on or about the 1st of August of the final year of the predecessor's lease in order to prepare and plant the same to small grain.

"That this farm is known and used as a wheat farm, and such crop must be planted in the fall. That such custom and usage is general and well understood in this section of the state."

Defendant's answer consisted of general and special denials. He specifically denied the existence of the custom pleaded by plaintiff and further alleged:

"This answering defendant further denies that he has any contrac(t)ual relations with the plaintiff either oral or in writing, and that the plaintiff is not a proper party to any alleged breach of contract as pled by the plaintiff, for the reason that he is not a party to said contract or does this defendant have any written or oral contract with the plaintiff with respect to the land in question."

In addition to the facts above stated, plaintiff offered evidence of custom and usage. Plaintiff and four other witnesses, including the Superintendent of the Indian Agency who supervised the execution of the leases in question, testified that it is the generally known and universal custom in the community in which the land here involved is located for an occupying tenant, who has grown a small grain crop on the leased premises during the last year of his lease, to yield custody of the tract, upon which the grain has been grown, to the incoming tenant on or about August 1st of that year so that the latter might enter upon the land and sow it.

Plaintiff further testified however that he never demanded possession of the stubble land for wheat sowing nor did he ever inform or advise defendant of his intention or desire to do such sowing, and as far as he knew defendant had no knowledge of such intention until plaintiff commenced the litigation here involved.

The case was tried to a jury and resulted in a verdict for plaintiff. On defendant's motion, the trial court thereafter set aside the verdict and granted a new trial. In the journal entry of judgment sustaining this motion the court made, among others, the following findings of fact:

"It was attempted and permitted in the trial of the case to be shown by evidence of usage and custom that it was the practice in the vicinity of this land to permit the incoming tenant to take possession of the cultivated land prior to the commencement of the terms of his lease, and the cause having been submitted on this theory, evidence having been received, the verdict was returned in favor of the plaintiff.

"It is the opinion of the Court that this procedure would have been proper had there been any uncertainty or ambiguity in the terms of the written lease, but in the absence of such it was error to admit evidence or submit the issue to the jury on the legal principle of usage and custom. * * *

"Since the lease contracts between the plaintiff and the defendant and the lessors and the Indian Department are complete within themselves, without ambiguity or uncertainty, it is the opinion of the Court that the admission of evidence of usage and custom and the submission of such evidence amounted to ingrafting upon the contract of the plaintiff provisions that cannot be found within the four corners of the contract, and that error was therefore committed in the trial of the case for the reasons above mentioned. * * *"

■ In the present appeal, plaintiff assigns the above ruling as error. It is asserted that in granting the new trial the court erred in a pure, simple and unmixed

question of law. It is contended that the court erred in holding inadmissible the evidence of custom and usage offered by plaintiff and that since the new trial was granted solely upon that ground this too was error. The general rule is that evidence of usage or custom is not admissible to vary, add to, or contradict the plain, definite and unambiguous terms of a contract, whether the contract is written or oral, or to bind or impose a duty or obligation, not incorporated therein, upon either of the contracting parties. Sooner Broadcasting Co. v. Grotkop, Okl., 280 P.2d 457, and cases therein cited.

Plaintiff relies on the rule that parties who contract on a subject matter concerning which known usages prevail, by implication, incorporate them into their agreements, if nothing is said to the contrary. Cherokee Grain Co. v. Elk City Flour Mills Co., 78 Okl. 120, 188 P. 1067; Bowles v. Brown, 187 Okl. 264, 102 P.2d 837, and cases from other states. In this case however there is something said to the contrary in the contract. Plaintiff's lease provides in plain and definite terms that he rents and leases the premises in question for a term beginning January 1, 1952, and ending on December 31, 1956. Plaintiff, under the plain terms of his lease, acquired no right to enter the premises, or any part thereof, prior to the date of entry provided in his contract. A lessor in a lease contract is certainly not required to protect himself against an entry upon the premises by his tenant at an earlier date than the date of entry provided for in the contract by a negative covenant expressly negating such right. In 55 Am.Jur., "Usages and Customs", sec. 33, it is said:

"In some instances, usage is expressly made a part of the contract. On the other hand, custom or usage may be expressly or impliedly excluded by the terms of the agreement. It seems clear that an express exclusion of custom is not necessary. It is sufficient ground for rejecting a custom as affecting the rights of parties to a contract that is excluded by necessary implication of the contract itself. It may be that the very object the parties had in mind when executing the contract was to

avoid the effect of a particular usage. * * *"

In Portland Investment Co. v. Oregon Mut. Fire Ins. Co., 163 Or. 1, 94 P.2d 734, 124 A.L.R. 1342, the Supreme Court of Oregon held:

"A custom will be rejected if it is excluded by necessary implication from terms of the contract."

█ Under the evidence in this case we think it may safely be said that the operation of custom and usage is at least impliedly, if not expressly, excluded by the terms thereof.

Plaintiff certainly had no right to enter upon the premises or any part thereof prior to the date of entry fixed by his contract. If he desired to enter any part thereof at a date earlier than the date fixed by his contract, he should have had a provision granting him that right inserted in his lease. While defendant in his lease agreed to surrender the stubble land to his lessor if the lessor wished to pasture the land or sow it to wheat, this provision did not inure to the benefit of plaintiff since he was not a party to that contract.

█ The record discloses that the evidence as to custom was admitted without objection by defendant. It is contended by plaintiff that consequently the court was without authority to set aside the verdict and grant defendant a new trial on the ground of such admission. We do not agree. In 20 R.C.L., "New Trial", sec. 50, the rule is stated:

"While in some cases a verdict based wholly upon improper evidence may be set aside on motion although such evidence was admitted without objection, the general rule is that the admission of improper evidence is not available as ground for new trial unless objection was made thereto at the time. * * *"

In Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482, the Supreme Court of Missouri held:

"Trial court's order properly granting new trial because of prejudicial argument to jury will be affirmed, though no objections were made or exceptions saved to argument.

"Circuit court has inherent power to set aside verdict and grant new trial during term at which verdict was rendered for errors committed during trial, though no objections were made or exceptions saved."

See, also, McHenry v. City of Parkersburg, 66 W.Va. 533, 66 S.E. 750, 29 L.R.A.,N.S., 860; Stroh v. Johns, Mo., 264 S.W.2d 304. In Bailey v. Sisson, 180 Okl. 212, 69 P.2d 65, 66, it appears that the trial court granted plaintiff a new trial on the ground that the judgment against him was not supported by sufficient evidence. Plaintiff did not demur to the evidence nor move for a directed verdict. Defendant contended that for this reason the trial court was without authority to grant a new trial. In denying this contention the court said:

"Defendant says that the question of the sufficiency of the evidence was not before the trial court on motion for new trial for the reason that neither demurrer to defendant's evidence nor motion for directed verdict was interposed by plaintiff. It is true that in the absence of such demurrer or motion the question of the sufficiency of the evidence is not presented by motion for new trial. Norman v. Lambert, 64 Okl. 238, 167 P. 213; Worrell v. Allen, 93 Okl. 3, 219 P. 367.

"The rule there stated, however, applies only where appeal is from the order overruling motion for new trial. While the trial court is not required to review the verdict and its own judgment from the standpoint of the evidence in the absence of the aforesaid demurrer or motion, the court is invested with inherent power to refuse the verdict when the trial judge on the ground of insufficiency of the evidence disagrees therewith. Anderson v. State [ex rel. King], 171 Okl. 587, 43 P.2d 474. In that case we held: 'It is not error to grant a new trial on the court's own volition when the evidence does not support the verdict.' "

Plaintiff concedes that in the absence of evidence as to custom, his evidence would be insufficient to sustain his cause of action against defendant. It is clear that the verdict of the jury was based solely upon incompetent evidence and there was consequently no competent evidence upon which to sustain it. Under the above rule, this alone constituted sufficient reason for the trial judge exercising his prerogative to set the verdict aside and grant a new trial.

This conclusion renders it unnecessary to discuss other questions raised by the defendant.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH and HALLEY, JJ., concur.

CORN, ARNOLD and JACKSON, JJ., concur in result.